JOSEPH HENDERICH, Respondent, v. KANSAS CITY, OZARK & SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, November 6, 1911.

1. **RAILROADS: Construction of Road: Damages: Independent Contractor.** In an action against a railroad company for damages for entering upon plaintiff's premises in the construction of a railroad and destroying his fences, so that stock entered and damaged his crop, the defense was that the road had been constructed by a construction company, an independent contractor. There was evidence tending to show that the construction company was not organized until after the entry upon plaintiff's premises and an abandoned answer of the defendant was introduced in which it admitted having entered upon the land

Henderich v. Railroad.

and constructed the road. There was also evidence to the effect that the party in charge of the construction work claimed to be representing the railroad company. *Held*, that the evidence was sufficient to go to the jury on the question of whether the damages had been done by the defendant and the trial court properly overruled defendant's demurrer to the evidence.

2. EVIDENCE: Abandoned Pleadings as Admissions. In a suit for damages against the railroad company for entering plaintiff's premises in the construction of its road and tearing down his fences, thus permitting stock to enter his fields and destroy his crops, an abandoned answer of the defendant, in which it admitted having entered upon plaintiff's land was held properly admitted in evidence against defendant, where the amended answer denied that defendant had entered upon the premises and claimed that the road was constructed by an independent contractor.

3. STATUTE OF FRAUDS: Pleading: Evidence. Where neither party by pleading or objections to the evidence relies on the statute of frauds, that question is eliminated.

4. CONTRACTS: Written Contract Merging All Negotiations. The general rule is that all precedent as well as contemporaneous negotiations in relation to a contract afterwards reduced to writing, are in the absence of accident or fraud, conclusively presumed to have been entirely merged in the written contract. But this rule presupposes an instrument without ambiguity or uncertainty as to its object and intention and a writing complete and perfect in itself.

5. ———: ———: Evidence: Parol Evidence to Identify Subject-Matter. While parol testimony cannot be admitted to contradict or vary the terms of the written contract, yet such evidence is competent to identify the subject-matter of the contract, where the instrument is alike applicable to several matters or things, but the terms are vague and general and do not definitely identify the subject-matter.

6. EVIDENCE: Written Instruments: Parol Evidence Identifying Subject-Matter. In a suit for damages against a railroad company for entering plaintiff's premises and tearing down fences in the construction of a railroad across his land, defendant introduced an agreement signed by plaintiff, authorizing the construction of a railroad across his land and agreeing to convey a right of way therefor. But this agreement did not designate the exact location of the right of way. *Held*, that it was proper to permit plaintiff to prove by oral testimony that at the time he executed the instrument it was with the understanding that the road was to be constructed around a hill, according to a certain survey

and not across the cultivated portion of his farm, where it was constructed.

7. ———: Parol Evidence of Writing: Search for Original by Custodian. A contract entered into between a railroad company and a construction company for building the road was executed in duplicate, and each party retained a copy. The defendant sought to prove the contents of the contract, claiming that the originals were lost and could not be found. It appeared from the testimony of the vice-president of the railroad that the railroad company's copy was not destroyed, but perhaps mislaid and would be found later and that the president of the construction company had stated that he did not know where the other copy was, but it was not shown that any effort had been made to find it. *Held*, that the trial court properly excluded the parol testimony of the contents of the contract.

8. RAILROADS: Construction of Road: Fencing Right of Way: Common Law Action for Destruction of Crops. Where the plaintiff brings an action at common law against a railroad company for entering upon his premises without right and without complying with the statute, and tearing down his fences in the construction of a railroad across his farm, so that cattle entered and destroyed his growing crops, section 3145, Revised Statutes, 1909, providing that a railroad company has three months after the completion of its road in which to fence the right of way, has no application.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*J. S. Clarke* and *L. O. Neider* for appellant.

(1) If respondent gave the company or any person permission to build its road over and across the land in question at a certain specified place, and the road is thereafter located at a different place from that specified and such different location is made with the knowledge of the respondent, but without objection on his part, then such company or person would not be liable for trespass and damages in this cause. Hosher v. Railroad, 60 Mo. 329; Hubbard v. Railroad, 63 Mo. 68; Hawkins v. Roby, 77 Mo. 140; Seibert v. Withington, 63 Mo. 577. (2) The written contract

signed by respondent and his subsequent acts precludes and estops him from claiming damages on account of the alleged trespass set forth in his petition. Chouteau v. Godding, 39 Mo. 229; Garn v. Finney, 40 Mo. 449; Dunce v. Beck, 46 Mo. 324; Price v. Hallett, 138 Mo. 561; Oliver v. Beard, 72 Mo. App. 181; George v. Summerville, 153 Mo. 7.   (3)   The party or company that constructed the railroad had three months after the completion of the construction of the same in which to fence the right of way and not until such time had elapsed would such party or company be liable in damages on account of cattle getting in on respondent's premises and destroying his growing crops.   Revised Statutes 1909, sec. 3145; Silver v. Railroad, 78 Mo. 528; Blewett v. Railroad, 72 Mo. 583; Gorden v. Railroad, 44 Mo. 201; Cobb v. Railroad, 42 Mo. App. 14.   (4)   Appellant is not liable for the failure of the construction company to erect fences to protect respondent's crops from the incursions of stock, or by "willfully and unlawfully" pulling down his fence.   Clark's Admr. v. Railroad, 36 Mo. 202; Silver v. Railroad, 78 Mo. 528.   (5)   The terms of the written contract for right of way cannot be varied, controlled, or affected by parol testimony.   The contract authorized J. B. Quigley or assigns to construct the line of railroad any place they wished over respondent's lands.   Johnson County v. Wood, 84 Mo. 489; Moore v. Henry, 18 Mo. App. 35; Brown v. Railroad, 18 Mo. App. 568; Imboden v. Ins. Co., 31 Mo. App. 321; Read v. Nicholson, 37 Mo. App. 646; Hair v. Wamsley, 32 Mo. App. 115.   (6)   The party entering respondent's premises under authority of the written contract for right of way could not be bound by the declarations of the parties to the contract not expressed therein and the parol evidence admitted tending to show where the line of road was to be located is not binding on this appellant.   McDermatt

v. Association, 24 Mo. App. 73; State ex rel. v. Hoshow, 98 Mo. 358; Tracy v. Iron Works, 29 Mo. App. 342. (7) If plaintiff's cause of action is one under the statute, then he does not allege sufficient facts to authorize him to recover and if it is one at common law, then at common law railway companies are not required to fence their right of ways to keep stock off of adjacent lands. Mangold v. Railroad, 116 Mo. App. 606.

*Rechow & Pufahl* for respondent.

(1) The petition states facts sufficient to constitute a cause of action, especially so after verdict. Comings v. Railroad, 48 Mo. 518; Knealy v. Price, 21 Mo. App. 297. (2) The written license relied on is not complete as to the location of the road and it was perfectly proper to admit testimony where the right of way therein provided for was to run, even if the jury found that respondent executed the paper. Comings v. Railroad, 48 Mo. 516; Rollins v. Claybrook, 22 Mo. 407; Moss v. Green, 41 Mo. 390; Lash v. Parlin, 78 Mo. 396; Norton v. Bohart, 105 Mo. 633. (3) The abandoned answer of defendant performs no office in the record proper and does not belong there but should have been printed in the bill of exceptions so that this court could consider the same with the other evidence. But if this court can fish around for evidence, then this answer makes the respondent's case complete upon the evidence. Devztlant v. Rawlings, 58 Mo. 75; Murphy v. Foundry, 29 Mo. App. 541.

GRAY, J.—In 1908, the plaintiff was the owner of a tract of land in the northeast quarter of section 29, township 28, range 15, in Wright county, Missouri, and this suit was instituted to recover damages which he claims he sustained by reason of the defendant

entering upon said premises and destroying his fences, so that stock entered thereon and damaged his crops in the sum of five hundred dollars.

The defendant answered that it entered into a contract in 1908 with the Ozark and Southern Construction Company, a corporation, whereby said construction company agreed to procure the right of way and construct a railroad for the defendant between the towns of Mansfield and Ava, Missouri; that by the terms of said contract, the defendant had nothing to do with the construction of the road, and that the construction company was to construct the same in its own method and turn it over to the defendant when ready for trains to run over the same; that said construction company, as an independent contractor, did construct said road through the said premises of the plaintiff.

It was also alleged in the answer, that on the 28th day of April, 1908, and prior to the construction of the railroad across the premises of plaintiff, plaintiff entered into a contract in writing, whereby he agreed to convey to one Quigley, or his assigns, by good and sufficient conveyance, a strip of land one hundred feet wide, over, through and across his said lands, to be used for right of way of the railroad company; that on the —— day of June, said Quigley assigned his rights in said contract to the said Ozark and Southern Construction Company, and thereafter said construction company did enter upon said premises and build said railroad over and across the same.

In his reply, plaintiff admitted he signed a writing, by the terms of which he agreed to give a right of way over a certain portion of his lands; that at the time he executed the same, he did so with the understanding that the right of way was according to a survey which had been made, and was on ground not in cultivation, and of little value, and that the occupancy of the same by the road, would in no wise have interfered with his

farm lands, buildings and crops; but the road was not constructed according to said survey, but over an entirely different tract of land, to his damage, etc.

It is appellant's first contention that the evidence shows conclusively that it was the construction company that entered upon the premises of plaintiff and built the road. If this contention is correct, it disposes of the case. The evidence shows, however, that the road was constructed through plaintiff's premises in July, 1908, and the construction company was organized on the 22nd day of July, 1908, and its contract with the railroad company was not entered into until the 29th day of July, of that year.

J. B. Quigley, vice-president and general manager of the defendant at the time of the trial, and chief engineer at the time the road was constructed, was called as a witness in behalf of the defendant, and he testified that by the last of July, the grading through plaintiff's place had been done. Charles Barger testified that he commenced to work for the construction company on the first day of August, and at that time the road had been constructed across plaintiff's land. In fact, the evidence shows that the construction company was not organized until after the entry upon plaintiff's premises, and the construction of the road across the same.

The plaintiff introduced in evidence an abandoned answer of the defendant, in which it was admitted that defendant, through its agents, servants and employees, entered upon the plaintiff's premises and constructed the road. The defendant company was organized the last of June, 1908, and was in existence at the time the road was constructed on plaintiff's premises. The evidence shows that one McIntosh, claiming to represent the railroad company, first entered upon plaintiff's premises and partly constructed the road across the same.

The defendant objected to the introduction of the answer. This objection was based on the ground that the answer was filed to a former petition, and that plaintiff had amended his petition, describing a different tract of land. The original petition described the land in the northeast quarter of the northeast quarter of the section, and the amended petition simply the northeast quarter of the section. The answer was admissable in evidence. In the amended answer, the defendant was claiming that it had nothing to do with the construction of any part of the railroad, and this original pleading expressly admitted that it was engaged in building a railroad over the premises of plaintiff, and further, that it was doing the same as the assignee of Quigley under the contract of April 28th.

The relation McIntosh sustained to the defendant company is not clearly shown in the record. The railroad company was organized to operate this road, and evidence went to the jury without objection, that in July he was constructing the road over plaintiff's land and claiming to represent the defendant company in so doing.

When all these facts and circumstances are considered, we do not believe the trial court would have been justified in declaring, as a matter of law, that the defendant did not enter upon the plaintiff's premises and cause the damage sued for.

The appellant claims that under the written contract of April 28, 1908, the plaintiff voluntarily gave the company a right of way over his lands, and is thereby estopped from asserting his claim for damages. That instrument reads:

"MANSFIELD, Mo., April 28, '08.
In consideration of one dollar ($1.00) and the benefits that will accrue the undersigned hereby agree to transfer and set over to J. B. Quigley or assigns by a good and sufficient deed of conveyance a strip of land

100 feet wide through my property in Wright County, Mo., to be used for the right of way of a railroad to run from Ava to Mansfield, a 50 center line as the road is constructed, and hereby agree to immediate occupation for above purposes.

Witness our hands and seals this the date above written.

| Name. | Sec. | T. | R. |
|---|---|---|---|
| Celia A. Smith | Lots 20 21 Nw Ne 4    12 a | 28 | 15 |
| J. A. Rippee | 29 Pr NE. NW | 28 | 15 |
| Joseph Henderich | 29 N ½ Ne | 28 | 15 |
| M. G. Hensley | 31 | 28 | 15 |
| Pr E ½ SW 31 | | | |
| M. G. H.    " | | | |

It is defendant's claim that under this agreement, it had the right to enter upon any part of plaintiff's premises and construct its road over the same, and that it was not proper for the trial court to permit the plaintiff to prove that at the time he was called on to execute the instrument, he stated he wanted to know what part of his premises were wanted for the right of way; that if the road was constructed around a hill, according to a certain survey, he would not be damaged, and he had no objections; that at said time he was assured that the road was to be built around the hill, according to the survey, and he then signed the contract.

In passing upon the action of the court in permitting this testimony, it must be considered that neither party, by pleading or objection, relied on the Statute of Frauds, and therefore eliminated that question. [Neuvirth v. Engler, 83 Mo. App. 420.]

It is the contention of the appellant that the contract is plain and complete, and therefore, parol testimony was not admissible to contradict or vary its

terms.    The general rule is, that all precedent as well as contemporaneous negotiations in relation to a contract afterwards reduced to writing, are, in the absence of accident or fraud, conclusively presumed to have been entirely merged in the written contract.    [Bethany Savings Bank v. Cushman, 66 Mo. App. 102.]

This rule, however, presupposes an instrument without ambiguity or uncertainty as to its object and intent, and that the writing is complete and perfect in itself.    [Broughton v. Null, 56 Mo. App. 231.]    And the rule is equally well established, that while parol testimony cannot be admitted to contradict or vary the terms of the written contract, yet such evidence is competent to identify the subject-matter of the contract where the instrument is alike applicable to several matters or things, but the terms vague and general not definitely identifying the subject-matter.    [Amonett v. Montague, 63 Mo. 201; Skinker v. Haagsma, 99 Mo. 208, 12 S. W. 659; Welsh v. Edmisson, 46 Mo. App. 282; Bray v. Adams, 114 Mo. 486, 21 S. W. 853; Norton v. Bohart, 105 Mo. l. c. 633, 16 S. W. 598; Moss v. Green, 41 Mo. 389.]

It may justly be called a memoranda of a contract to be afterwards executed.    It expressly provides that the persons signing it will execute deeds to a strip one hundred feet wide, across their respective tracts of land, but the location of the strips cannot be determined from the contract.    It was therefore proper for the plaintiff, when called upon to sign this instrument, to inquire through what part of his premises it was proposed to build the road.    And when this was determined and he gave his consent, Mr. Quigley or his assigns were not justified in entering upon an entirely different part of plaintiff's premises without his consent.    [Galloway v. Wilder, 26 Mich. 97; Manning v. Railroad, 33 Atl. 802; Karmuller v. Krotz, 18 Ia. 352; 14 Cyc. 1205.]

The plaintiff owned one hundred and sixty acres of land, and while he agreed to give a right of way over the same, the location thereof was not stated, and the parol testimony showing that at the time he executed the instrument, a survey of the proposed road existed across his land, and that he signed the agreement with the understanding that the road was to be built on that survey, in no wise contradicted the terms of the written agreement. [Kinney v. Hooker, 26 Atl. 690; French v. Hayes, 43 N. H. 30, 80 A. D. 127; Reduzzi v. Pestelli, 64 Atl. 1128; Gardner v. Webster, 64 N. H. 520, 15 Atl. 144; Barker v. Railroad, 37 S. W. 848.]

In Kinney v. Hooker, supra, it is said: "When a way is not located by the grant, the parties may locate it by parol agreement, at any point on the premises over which the right is granted; and evidence of such agreement is admissible and does not contradict or vary the deed." And it is further said in this case: "In determining the intent of the parties to the grant, it is important to consider the situation and relation of the respective lots to each other."

In Barker v. Railroad, supra, the plaintiff executed an instrument granting a right of way over his premises. At the time he did so, a survey had been made on his lands, and the court held that it was the intention of the parties that the right of way was according to the survey, and that the company was liable for any damages sustained by plaintiff on account of entering upon another part of his lands and constructing the road.

It appeared in evidence that the contract between the railroad company and the construction company for building the road was executed in duplicate, and that each party retained a copy. The defendant sought to prove the contents of the contract, claiming that the originals were lost or could not be found. The court excluded the parol testimony, and defendant assigns such action as error.

The evidence as to the loss of the contracts was given by Mr. Quigley, the defendant's vice-president, and was as follows:

"Q.  Have you made search for that contract? A.  Yes, sir; I have looked everywhere for it where I thought I might be able to find it; perhaps later on we will find it.

Q.  Have you been able to find it so far?  A. No, sir; I have been unable to find it so far.

Q.  This contract was made in duplicate?  A. Yes, sir.

Q.  The railroad company kept one copy of it and the construction company kept the other copy? A.  Yes, sir.

Q.  Have you any officer of that construction company here?  A.  No, sir.

Q.  Each company kept one copy of it?  A.  Yes, sir.  Mr. —————— was president of the railroad company and most of the papers he took with him to Kansas City.

Q.  Have you made any effort to get the copy the construction company has?  A.  I have asked those people for it and they said they did not know where it was.

Q.  What people did you ask for it?  A.  The officers of the construction company, and I wrote to Mr. O'Neil, head of the company, and he wrote me back and said he did not know where their copy of the contract is."

It thus appears that as to the copy kept by the defendant, that it was not destroyed, but perhaps mislaid, and would be found later.  As to the copy kept by the construction company, it was not shown that any effort had been made to find it, and all the evidence as to its loss or destruction is contained in the declaration of the head of the company that he did not know where it was.

In Blondeau v. Sheridan, 81 Mo. 545, the court permitted secondary evidence on the following testimony of a witness: "I had the original of this contract handed me by McGhee. Don't know what has become of it; don't remember what I did with it; I may have the paper somewhere; I have looked for it." In holding the trial court erred in admitting the secondary evidence, the court said: "There must be proof of such a search for the original, by the party who had custody of it, as reasonably warrants the conclusion that it is either destroyed, lost or mislaid, and cannot be found. Where the witness states that he may have it in his possession it shows that, notwithstanding he has looked for it, he may, by a diligent search in the proper places, find it, and that the search he had made was by no means thorough or satisfactory to himself."

As Quigley testified that he might find the company's copy later, it is doubtful, under this decision of the Supreme Court, whether he had sufficiently shown the loss of the defendant's copy to permit parol testimony of its contents. But there was no showing that any effort had been made to find the construction company's copy. A statement from the head of the company that he did not know where the contract was, did not prove that it was lost or destroyed, or that any effort had been made to find it.

It is claimed that the plaintiff made no objections to the entry upon his premises, and that he assisted in clearing the right of way, and thereby acquiesced in the change of location and cannot maintain this action for damages. The trouble with this contention is, it is not based upon uncontradicted evidence. The plaintiff testified that he did not assist in the work on his premises, and that he objected to McIntosh and was told to wait, that his damages would be paid. The plaintiff was running a saw mill, and did furnish the construction company certain lumber which was used in the construction of the road, but if any of it

was used on plaintiff's premises it was but a small portion and in the construction of a bridge. In fact, the receipts for the lumber introduced in evidence showed that the lumber was furnished after the road had been constructed through plaintiff's farm.

On the testimony, the question was one for the jury, and was by the court submitted by instruction.

It is the further contention of appellant that the party or company that constructed the road had three months after its completion in which to fence the right of way, and that not until such time had elapsed would such party or company be liable in damages on account of cattle getting in and destroying plaintiff's crops.

The plaintiff's action is at common law, and if the defendant, without right, and without complying with the statute, entered upon plaintiff's premises and took down his fence so that cattle entered on his premises and destroyed his growing crops then the statutory provision regarding fences has no application. If the defendant had condemned a right of way, or had entered on the specific strip it had acquired a right to, then it might be another question in regard to the fences would be presented.

We have examined the instructions and find that the issues were fairly submitted to the jury. The appellant does not complain of the amount of the verdict, and has expressly waived that question in this court.

The respondent filed a motion asking the court to affirm the judgment on the ground that the appellant did not file, in proper time in this court, the certified copy of the judgment and order allowing the appeal, and has filed affidavits and brief in support of the same. But we have examined the case on the merits, and reached the conclusion that the judgment should be affirmed, and prefer to dispose of the case on the

merits, rather than to affirm on account of failure to perfect the appeal under the circumstances. The judgment will be affirmed. All concur.