Pipe et al. v. Bateman et al.

---

PIPE *et al. v.* BATEMAN *et al.*

Where a suit in chancery was brought in the names of "Jonah Pipe and William H. Humphreys, who sue in behalf of themselves, and many other persons too numerous to bring before the court, constituting the members of the British Emigrant Mutual Aid Society;" *Held*, That the petitioners were not entitled to relief in the character in which they sue, and that the bill must be dismissed for want of proper parties.

A mere voluntary association, without franchises, cannot sue in the character of a society possessing corporate rights.

Unincorporated voluntary associations, except for charitable purposes, whatever may be the number of their members, and of whatever nature or extent the object undertaken, are nothing more than partnerships; and when suit is brought in their behalf, it must be brought in the name of all the partners, or in the name of one or more, for the use of all.

## *Appeal from the Lee District Court.*

THIS is a suit in chancery, to compel the conveyance of certain real estate.    The original bill was filed January 14, 1852, in the names of "Jonah Pipe, and William H. Humphreys, who sue in behalf of themselves and many other persons too numerous to bring before the court, constituting the members of the British Emigrant Mutual Aid Society," against Bateman and others.    Two amended bills were filed by the complainants, all of which were answered by the respondents.    The cause was heard upon the bills, answers, replication, and testimony, and a decree rendered in favor of the complainants, under the prayer for general relief. The respondents appeal.

*J. C. Hall* and *A. Hall*, for appellants.

*Samuel F. Miller*, for appellees.

ISBELL, J.—The question that naturally first arises in this case, is, are the petitioners entitled to relief in the character in which they come before the court? or, in other words, are there proper parties to this bill? If this question should be found in the negative, it will dispose of the whole case.

There is no pretence set up that these petitioners are, or that this society or association is, incorporated. At most, the petitioners only constitute a voluntary association without franchises; yet they come before the court in the character of a society possessing corporate rights. True, they do not sue in their corporate name, as the "British Emigrant Mutual Aid Society." They describe themselves as "Jonah Pipe and William Humphreys, who sue in behalf of themselves and many other persons too numerous to bring before the court, constituting the members of the British Emigrant Mutual Aid Society." But this is but describing themselves as the constituent elements of a society, and the whole bill speaks of the petitioners as a society. The primary object of it is, to compel Bateman, Etheridge, and Drozier to convey to Pipe, who is claimed to be treasurer of the society, certain lands which are claimed to be held by them in trust for the society, on the ground that they have been forfeited to the society, or, to use the language of the bill in this behalf, "have lapsed or merged to the society, who are the plaintiffs in this suit." The ground on which this forfeiture is claimed, is, that those to whom these lands were allotted, have violated fundamental rules of the society. The money claimed as in the hands of Bateman, is alleged to be the funds of the society, and the prayer contemplates a conveyance to Pipe, for its use.

This association is one, the primary object of which is pecuniary profit. It cannot, with any propriety, be regarded as one of those unincorporated societies whose identity is recognized under the name of a charity. Its benevolence, so far as contemplated by it, is confined to its own members; nor is there anything of a general or public nature in it, and these are the distinguishing features of such societies. *Babb*

v. *Read*, 5 Rawle, 151 ; *Attorney-General* v. *Heelis*, 2 Simons & Stewart, 67 ; *McGill* v. *Brown*, Baldwin C. C. 66 ; *Thomas* v. *Elmaker*, 1 Par. Select Eq. C. 108.   Yet the effect of this bill is, to sue in the character of a society, and not as partners or persons jointly interested.   Should a court of equity lend its aid to the petitioners, coming before it in such a character.   It is the exclusive prerogative of government to create corporations, and invest them with power to sue as such by their corporate name ; and upon principles of policy, the courts of the country do not sit to determine upon charters granted by persons, who have not the prerogative to grant charters.   Story's Eq. Pl. § 497 ; 1 Daniell Ch. Pr. 29 ; *Lloyd* v. *Loaring*, 6 Vesey, 773.   In this case, "Lloyd and two other persons, on behalf of themselves and all other members of the Caledonian Lodge of Free Masons, except the defendant Loaring," brought their bill to obtain certain chattels belonging to the lodge.   On a general demurrer to the bill, for want of parties, the chancellor (Lord Eldon) declined hearing argument in support of the demurrer, and in allowing it, in the course of his opinion uses the following emphatic language :   " How is this court to take notice of these persons as a society ?   A bill might be filed for a chattel, the plaintiffs stating themselves to be jointly interested with several other persons, but it would be very dangerous to take notice of them as a society, having anything of constitution in it."   Again he says :   " It is the absolute duty of courts of justice, not to permit persons not incorporated to affect to treat themselves as incorporated on the record."   Again :   " That this court may hold jurisdiction to have a chattel delivered up, I have no doubt ; but I am alarmed at the notion, that these voluntary societies are to be permitted to state all their laws, forms, and constitutions upon the record, and then to tell the court they are individuals."   And he concludes his opinion by saying : " I desire my ground to be understood distinctly.   I do not think the court ought to permit persons who can only sue as partners, to sue in a corporate character, and that is the effect of this bill."   In support of this doctrine, he cites

*Cullen* v. *The Duke of Queensburg*, 1 Bro. Ch. Ca. 103, in which a committee of a private association, consisting of sixty persons, were held responsible for goods furnished the club. And he quotes the chancellor (Lord Thurlow), as having said, in that case, that he would convince the parties that they had no laws or constitutions. The same doctrine has been repeatedly recognized in the courts of England, as well as of this country. Thus, in *Pearce* v. *Piper*, 17 Vesey, 1, which was a case of a voluntary association for granting annuities to widows; *Cockburn* v. *Thompson*, 16 Vesey, 321, that of a philanthropic annuity association; and *Beaumont* v. *Meredith*, 2 Ves. & Beames, 180, which was a society for the relief of its members in sickness. And indeed until the passage of 7 and 8 Vic. chap. 110, there was in English law, no distinctions in partnerships arising merely from the number of partners, or the object of the undertaking. All companies, societies, or partnerships, whatever might be the number of their members or partners, and of whatever nature or extent the object undertaken, which were not confirmed by public authority, that is, incorporated by act of Parliament, or charter, or privileged by letters patent, were in law nothing more than ordinary partnerships, consisting of two or three partners, and undertaken for private purposes. Collyer on Part. § 1078. The same doctrine is recognized in the case of *Babb* v. *Read*, 5 Rawle, 158, where the members of a society of odd fellows were treated as partners; and also in all that class of cases not within those properly denominated charities, in *Thomas* v. *Ellmaker*, 1 Parson's Select Eq. Ca. 98. A somewhat different rule, so far as the liability of the members of an unincorporated company of a public character, was concerned, was adopted by Chancellor Kent, in *Livingston, Executor of Fulton* v. *Lynch*, 4 Johns. Ch. 573, which was a company for the purpose of navigating the Hudson by steam; the chancellor there holding, that the members held as tenants in common, and not as partners. But says the chancellor, in speaking of the articles, that they were binding

upon all the members when adopted by all, as a solemn private contract.

No case has been pointed out to us by counsel, nor have we been able to find any, where a question has been taken for a want of proper parties to the bill, where a mere voluntary association, for pecuniary profit, without franchise, has been recognized and permitted to sue in that character, either in the courts of England or this country.

In the case before us, issue was distinctly taken on the existence of the society, and that issue, on the evidence, by the court below, was determined in favor of the defendants; and without here recapitulating the testimony, we think we may say, that in that determination we heartily concur. But the objection appearing, as it does, on the face of the bill, might have been taken advantage of by demurrer, or insisted on at the hearing; for we regard it as vital to the character of the bill, and the relief asked. See Story Eq. Pl. § 236, and authorities there cited.

The bill states, that the lands claimed have lapsed or merged to the society. If it be true, that this society is one of the character we attribute to it, we are certainly at a loss to see how a forfeiture could accrue to it, for the reason, that we do not see how it could hold itself in that character, or how it could be a *cestui que trust*. See Hill on Trustees, 52. Or how Pipe could hold for the use of the society, which is the effect of the prayer, for a similar reason. Regarding, then, the question of a want of proper parties, as vital to the relief prayed, we are constrained to the conclusion that the bill must be dismissed.