CHARLES EVANS

*v.*

THE NEW AUDITORIUM PIER COMPANY.

[Filed June 3d, 1904.]

1. An owner of lands bordering on high-water mark, who has not obtained the state's title to the lands lying in front of his property and below low-water mark, cannot charge the latter with an easement enforceable against a subsequent grant by the state of its title in those lands.

2. Where an owner of land bordering on high-water mark conveyed the same by a deed containing a covenant against the erection of any building nearer than twenty-seven feet to a certain street, this restriction did not apply to lands subsequently added by natural accretion to that conveyed.

3. Where several owners of lots fronting on a beach joined in a deed granting to a city an easement in a strip of land several miles long, and passing over the property of a great many different owners, to be used for a walk, with a covenant that no building should be erected on the ocean side, one of the co-grantors was entitled to restrain one of the other grantors from building a structure on the ocean side of the walk on land which the latter grantor had, subsequent to the covenant, acquired from the state.

*Mr. Burrows C. Godfrey* and *Mr. Jay Ten Eyck,* for the complainant.

*Mr. Charles D. Thompson,* for the defendant.

GREY, V. C.

The complainant seeks to restrain the defendant company from constructing a lateral addition to its pier, which is located close to the ocean end of Pennsylvania avenue at Atlantic City.

The bill of complaint presents several grounds for the restraint, based upon restrictions expressed in three different deeds under which the complainant contends that he has a *status* which entitles him to the relief which he asks.

This case was considered on the hearing of an application for a preliminary injunction, in which an opinion was given on most of the points raised by the pleadings. It is reported in *63 N. J. Eq. (18 Dick.) 674.*

The same questions here presented against the building of the same lateral addition to the defendant's pier were also much more elaborately argued in the cause wherein Atlantic City was the complainant against the New Auditorium Pier Company, seeking to enforce the covenants of the boardwalk deed of April 30th, 1896, made to Atlantic City by Charles Evans, Richard Loper and others. That case is reported in *63 N. J. Eq. (18 Dick.) 644.* This case has also been heard on final hearing and an opinion given to the same effect.

This final hearing of this cause is on substantially the same lines as were presented in those cases. Almost all the proof is documentary and was before the court at the preliminary hearing. A stipulation as to the facts agreed upon between the parties covers nearly the same ground as the affidavits annexed to the bill and the answering affidavits of the defendant, which were used at the preliminary hearing.

In the bill of complaint Mr. Evans bases his right to a restraint upon his *status* under three several deeds, set out or referred to in the bill. The first deed was made by Charles

Evans to Atlantic City on January 2d, 1890. It grants an easement for a boardwalk at the ocean edge with an attending covenant restraining the erection of any buildings oceanward of the boardwalk. The second deed was made by Charles Evans to Richard F. Loper on July 22d, 1895; conveys a lot of land opposite Mr. Evans' hotel on Pennsylvania avenue, at the ocean front, and imposes on the grantee a covenant that he and his assigns should never erect on the premises granted any house or building nearer the line of Pennsylvania avenue than twenty-seven feet from the property line. The third deed is what has been described as the boardwalk deed or covenant, dated April 30th, 1896, made by Charles Evans and Richard F. Loper (and many others, owners of the ocean front) to the city of Atlantic City. This deed creates the easement of way (sixty feet wide) of the present new steel boardwalk along the ocean front of Atlantic City, with restrictions against the erection of any building on the ocean side of the boardwalk, except that an owner may build on his property a pier, provided the same is one thousand feet long and is built of steel or iron.

The claims of the complainant, Evans, under the first and second deeds above referred to, are fully discussed in the two opinions above cited, especially in *63 N. J. Eq.* (*18 Dick.*) *662 et seq.,* citing cases on the subject. When those deeds were made Evans had no title to the lands lying below high-water mark. The defendant's proposed construction, which is now challenged, is located below high-water mark. Evans could not charge the lands which he did not own with restrictions as to their use. The rule holds good when a riparian owner, who has not acquired the state's right to lands lying below high-water mark, attempts to restrict the use of such lands. The decisions on the question declare that an attempted charge by such a riparian owner does not bind the lands lying below high-water mark when the state shall have subsequently granted them to another person. See third syllabus, *63 N. J. Eq.* (*18 Dick.*) *645.*

The complainant, respecting the restriction against erecting buildings within twenty-seven feet of Pennsylvania avenue, contained in the deed, Evans to Loper, of July 22d, 1895, though

admitting that the deed did not convey the lands on which the defendant is building, yet insists that since that time there has been a natural accretion which has carried the high-water mark of the lands conveyed further into the ocean; that this accretion has taken Pennsylvania avenue with it by operation of law, and that the restriction on the lot originally conveyed is also extended over the new accretion bordering on that avenue. The claim is in my view not sustainable. It is within the rulings above referred to, which hold that the restriction imposed is limited to the lands which the grantor owned when the deed was made, and that he cannot, as riparian owner, impose an easement upon the state's land lying under water in front of his own, which shall bind the state's subsequent grantee.

The complainant's position regarding the third conveyance, the boardwalk deed or covenant of April 30th, 1896, stands on very different basis. He is an owner of beach front bordering on the boardwalk. His lands presently enjoy the benefit of the boardwalk, the use and value of which are threatened by the defendant's proposed structure, which is a step to shut in the boardwalk from its sea view, for if the defendant company may build on the ocean side, parallel with the boardwalk, so may every other owner, and its whole distinctive attraction may be thus destroyed. Mr. Evans was also one of the co-grantors who joined in the boardwalk covenant of April 30th, 1896, giving Atlantic City the easement over his portion of the way. Mr. Richard F. Loper (then the owner of the _locus in quo_ by purchase from the State of New Jersey by his deed from the riparian commissioners, dated August 29th, 1895) joined with Mr. Evans and others in the covenants of April 30th, 1896. So did Joseph Brady, one of the grantors of the defendant company. Each of these co-grantors gave up that part of his own land which was covered by the boardwalk strip in consideration of a like gift made by his co-grantors. The attending covenants, securing light, air and view, were obtained for a like consideration. It was a general scheme of public improvement in which all participated. Its form was a covenant with Atlantic City, but in fact it was a gift by the co-grantors to the public and to

each other. Atlantic City paid nothing to the grantors, but it spent large sums in building the boardwalk.

All the values were given by the grantors. No one grantor, nor anyone claiming under him, having accepted the benefits of the others' gifts, can be permitted to destroy its value in an essential particular, as the defendant company now seeks to do.

Its Auditorium pier is built immediately contiguous to the boardwalk, using it for access to its Auditorium building.

Any co-grantor who joined in the gift of the easement has a *status.* to enforce the general scheme arranged and perfected by it.

The defendant contends that there is no proof of a general plan, no meetings of owners, no conference or association for any general object.

It seems to me that it is impossible to read the boardwalk covenant deed and follow the course of its lines for the several miles of its length over dozens of ownerships at the ocean edge without perceiving, on the face of those covenants, every indication of a common purpose on the part of the various owners to contribute to the creation of a public promenade at the beach front with free light, air and ocean view.

The other questions raised in these cases are discussed in the opinion filed at the same time with this one in the case of *Atlantic City* v. *New Auditorium Pier Co., ante p. 284,* on final hearing.

I will advise a decree for the complainant under the provisions of the boardwalk covenant of April 30th, 1896.