JAMES E. WYNANS, Appellant, v. W. A. CARRELL and GRACE CARRELL, Appellees.

**Easements:** LOCATION OF HIGHWAY: EVIDENCE. In this action to quiet
1 title to land over which defendants claimed a right of way under an express grant which failed to fix its location, the evidence is held insufficient to show a location of the right of way different than the way used by defendant when suit was brought.

**Same.** Where the owner of a large tract of land conveyed a por-
2 tion thereof not adjacent to a highway, with a provision that the grantee should have a right of way through the grantor's remaining land to be used as a road, such provision created a right of way appurtenant to the land granted, the location of which might be fixed by agreement or by user.

*Appeal from Lee District Court.*—HON. JAMES W. BOL-
LINGER, Judge.

THURSDAY, FEBRUARY 15, 1912.

ACTION to quiet title. The petition alleges that the defendants claim a right of roadway over plaintiff's land. Such right is challenged by the plaintiff, and a decree quieting his title is prayed. The defendants, who are husband and wife, admit that they claim a right of roadway over plaintiff's land. There was a decree for the defendants, and the plaintiff appeals. *Affirmed.*

*Herminghausen & Herminghausen,* for appellant.

*R. N. Johnson* and *T. B. Snyder,* for appellees.

EVANS, J.—The plaintiff and defendant W. A. Carrell are adjoining owners of small tracts of land respectively near the city of Ft. Madison. The land of the plaintiff lies between that of the defendant and the public highway. The defendant has no practicable means of outlet from his tract (upon which he resides) except over the plaintiff's land. For many years the defendant and his grantors have traveled over such land to and from the public highway. Whether they have done so in the exercise of a right or as a mere matter of sufferance and license on the part of the plaintiff and his grantors is the question in dispute.

Both parties trace their titles to their respective tracts to a common source, one Wilson. In order to ascertain their rights, we have need to look back to the common source of title. Prior to 1864 Wilson was the owner of a tract of land comprising the E. ½ of the S. W. ¼ of a certain section 33. Such tract included the tracts involved in this dispute and other lands. Wilson sold his land in small tracts to various grantees at different times. The Wilson land touched the highway at its south end, and this was its only connection with the highway. In 1864 Wilson sold a small tract to Gutka at the northern extremity. This was

his first conveyance of any of the lands involved in this dispute. In 1865 he sold another tract lying immediately south of the west half fo the Gutka land to Goeldner. This was his second conveyance of land involved in this dispute. Both the Gutka and Goeldner tracts are now owned and occupied by the defendant. His residence is located near the south line of the Goeldner tract. The conveyance from Wilson to Gutka contained the following provision: "And we do hereby grant Martin Gutka a right of way southward, ten feet wide, *through said Wilson's land* to be used as a road." The conveyance from Wilson to Goeldner contained the following provision:

"The said Wilson reserves a right of way through said tract of land, ten feet wide, to be used as a road by his grantees, and give him the said August Goeldner, the right of way *southwardly through my land.*" At the time of the conveyance by Wilson to Goeldner he was still the owner of all the adjoining land on the south and extending to the highway. He continued to be such owner until April, 1875. In April, 1875, he sold all that particular part of his land lying between the Goeldner land and the highway to Christ Boehme. This is the land which is now owned and occupied by plaintiff. The defendant acquired the Goeldner land in 1907 by *mesne* conveyances, each of which contained a reservation similar to the following, which we quote from the deed of Goeldner to his grantees: "The said Goeldner reserves the right of way through said tract of land ten feet wide, to be used as a road by his grantees, and gives them the said . . . the right of way *southward through Christ Boehme's land* as is laid down on a plat in possession of E. G. Wilson, or his grantees."

A similar provision was included in the deed to the defendant from his immediate grantor. The conveyance from Wilson to Boehme contained no reference to a road of "ten feet," except that it reserved "seven and one-half feet as a road on the east side," and also "fifteen feet off of the

south side for road purposes." It is made to appear, also, that in 1863 Wilson had conveyed a small tract to Amburn Bros. in the southeast corner of his land, and that his conveyance provided for fifteen feet of roadway between himself and the Amburn tract, and provided that each should contribute "seven and one-half feet" thereof. This roadway would be sixty-six rods in length. The contention of plaintiff appellant is that the reservations in the conveyances of Gutka and Goeldner were intended to connect with the "fifteen feet" roadway between Amburn and Wilson, and that this was the only outlet intended by Wilson's conveyances to Gutka and Goeldner.

Appellant also contends that that roadway became the course of the travel, and that it fixed the location of the roadway reserved for Gutka and Goeldner. We think the

1. EASEMENTS: location of highway: evidence.

testimony fails to sustain this contention. It appears quite clearly that there never was a *definite* line of travel in an early day. The Wilson tract was very rough, and travel in a straight line was quite impracticable in the natural condition of the surface. No construction work appears to have been done. The land is in the high bluffs back of the river bottoms. Near its center line a creek runs southerly toward the river. The route of travel kept close to the creek and often followed the bed of the creek. It appears clearly that the route contended for by appellant was impassable.

Appellant concedes this, but contends that it became so *after* the travel had begun over it, and that it was the duty of parties interested to keep it in repair. Within a few months after Boehme had obtained his conveyance, he sold as a right of way to a railroad company the very ground covered by the route for which appellant contends. This was actually occupied by the railroad company shortly thereafter, and it has remained in the occupancy of the railroad company ever since. There does not appear to have been any protest or adverse claim by any person. This

conduct on the part of Boehme is a strong circumstance tending to show that the route of travel had not been fixed up to that time as contended for by the appellant. It could not have been fixed there afterwards because of the adverse occupancy by the railroad company. After the occupancy by the railroad company, the travel from the Gutka and Goeldner tract did pass over Boehme's land by routes varying slightly according to circumstances. The ownership of Boehme's land remained in him until 1900 at which time it was sold at partition sale and conveyed by referee's deed. The referee's deed contained the following reservation: "Save and excepting a *roadway and the right of way of the railway company.*" The same reservation was contained in all subsequent conveyances, including the conveyance to the plaintiff himself in 1904. It is evident from these conveyances that a right of *"roadway"* over the conveyed premises was recognized. The only roadway to which reference could be had was the travel already referred to which was entirely outside of the location now contended for by appellant.

The defendant Carrell acquired the Goeldner land in 1907, and has occupied the same ever since. He found a well-defined roadway in use across the plaintiff's land. The plaintiff used the same; and the defendant used the same without any objection by plaintiff; so far as the use was concerned. This roadway extended up to the partition line between plaintiff and defendant and close to the defendant's residence. The plaintiff and defendant built a partition fence extending east and west across such road. The plaintiff himself assisted in cutting the wire and making the opening in the fence at the road for the purpose of enabling the defendant to pass through. On this road a bridge across the creek has been maintained for some years. This bridge became out of repair or was washed away. At plaintiff's request, the defendant assisted in rebuilding the bridge and furnished a part of the material. These matters in the main are conceded by the appellant, but he claims that he assert-

ed his paramount *right,* and that he only permitted the *use* of the road to the defendant as a matter of *license.* He does not claim that there is any other location where a road might be·laid with better advantage to him. Indeed, he does not claim that there is any other practicable outlet available to the defendant.

Without going into further details, we may say that we reach the conclusion that by the conveyances to Goeldner and Gutka a right of outlet to the highway was created over the Wilson land which is now the land 2. SAME. of the plaintiff, and that such right created an easement appurtenant to the tracts conveyed, and that such easement has always been recognized until the beginning of this suit. We reach the further conclusion that no definite location of the line of travel was ever fixed by agreement, acquiesence, or otherwise at any time prior to the use of the present roadway. It is manifest also from the record that there is no valid objection to the location of the present roadway as such. The real controversy between the parties did not arise over the roadway but over other matters. If the parties could have maintained the grace of patience as to some other matters, they would have had no controversy over the roadway. This is rendered evident from the following testimony of the plaintiff himself:

We had plenty of talk after he circulated a petition to the State Board of Health to prevent the scavenger from dumping on my land; that was the beginning of it, but he understood from the beginning that it was a private road. The trouble first came over his chickens destroying my crops, and his hogs and cows and horses there were continually destroying my crops. They did hundreds of dollars of damage. There was no objection made to his using the road until this difficulty started between us. He used the road all the time that I lived there, and he went across the premises through the creek. I do not think he had any other way to reach his land, and he has not any other way now. The creek runs through my land all the way. They

could not get out through the creek without going clear across my land. Carrell furnished, I should judge, about five or six planks for one bridge. He did work on the big bridge and got pay for it, or was offered pay. . . I told him that I was going to see if I could not stop him from going across there.

Appellant filed a motion to strike appellee's amended abstract. This motion must be overruled.

The decree entered by the trial court is right, and is accordingly *affirmed.*