PRESBYTERIAN CHURCH OF OSCEOLA et al., Appellees, v. W. D. HARKEN et al., Appellants.

**PARTIES: Plaintiffs—Unincorporated Association—Trustees.** An unincorporated society (for instance, a church) can be neither plaintiff nor defendant in an action. An action in its behalf should be brought by and in the name of its trustees (of an express trust), but overnicety will not be required in the phraseology of the caption to the pleading. (Sec. 3459, Code, 1897.)

**DEEDS: Exceptions and Reservations—Appurtenant Rights—Presumption—Burden of Proof.** A reservation, in a deed of conveyance of *part* of contiguous land owned by the grantor, of an easement or right to pass over the part conveyed, is *presumed* to have been intended to create a right appurtenant to the land which was to be reached by the reserved way. He who claims that the reservation created a purely personal right or license in the grantor only, has the burden to so show, the evidence bearing thereon being, *inter alia,* (a) the deed itself and whether it contains words of inheritance, (b) whether the right has been recognized in subsequent conveyances, and (c) the situation and circumstances surrounding the property. (Sec. 2913, Code, 1897.)

PRINCIPLE APPLIED: The east half of a quarter block was bounded by a street on the south and east, by an alley on the north, and by private property on the west, and was all owned by the same person. The owner sold the north 80 feet, and in the deed reserved a 10-foot strip across the west end thereof for a driveway, and agreed to maintain a gate at the north end of the strip. Nothing appears to have been done about erecting this gate. Some 10 years later, the owner sold to plaintiff the remainder of the tract, *together with her interest in said 10-foot strip.* In the meantime, there had been six conveyances of the said 80-foot strip, and all these recognized and preserved the right of the original owner in the said 10-foot strip. A house was on this south portion, and said original owner frequently used said 10-foot strip, but not all the travel was confined to the 10-foot strip, owing to the fact that all the fences save the one on the west end of the 80-foot strip

were removed, and also because travel over said strip was interfered with by a vault built by the original owner near the south end of the 10-foot strip, and by a telephone post. *Held*, the reservation of the 10-foot strip created a right *appurtenant to the south part of the quarter block.*

**DEEDS: Exceptions and Reservations—Distinctions.** Technical distinction between "exceptions" and "reservations" in deeds discussed.

**EASEMENTS: Extent of Right—Deed Controlling.** An easement will be confined strictly to the purpose expressed in the deed reserving it.

**EASEMENTS: Abandonment—Non-User—Limitation of Actions.** Non-user of an easement for the full statutory period of limitation for actions is subject to explanation.

**EASEMENTS: Termination—Noncompliance with Conditions.** An easement is not necessarily destroyed by a failure of the owner of the easement to comply with conditions relating thereto which are not insisted on by any of the parties concerned. So held as to the failure to erect a gate at a driveway.

**ADVERSE POSSESSION: Hostile Character of Possession—Easement—Recognition of Right.** An easement may not be defeated on the plea of adverse possession, when the entire chain of title of the pleader recognizes the existence of the easement up to a time less than five years before the action is brought.

**ESTOPPEL: Grounds of Estoppel—Change of Position—Easement—Abandonment.** One may not base a claim of estoppel to insist on an easement, on alleged acts of abandonment of the easement, when he has in no wise, financial or otherwise, changed his position by reason of such acts.

**EASEMENTS: Extent of Right—Inadequate Easement.** Inadequacy of an easement for the purposes for which granted is no reason for withholding it from the one clearly shown to be entitled thereto.

*Appeal from Clarke District Court.*—H. K. EVANS, Judge.

THURSDAY, JUNE 29, 1916.

SUIT in equity to enjoin defendants from interfering with plaintiffs in the use and enjoyment of a certain strip of land and to require defendants to remove certain obstructions

placed thereon. Defendants challenged plaintiffs' right to sue, denied their title or right to enjoy the strip, pleaded abandonment and non-user thereof and estoppel and the statute of limitations. Thereafter, the parties named as trustees in the caption filed a petition of intervention for and on their own behalf, and also on behalf of all the members of the Presbyterian Church of Osceola, who, it was alleged, were so numerous that it was impracticable to bring them all into court, in which they asked for practically the same relief as plaintiffs prayed in their original petition. Defendants filed a motion to strike this petition, which, it seems, was never ruled on. On the issues joined between plaintiffs and defendants, the case was tried to the court, resulting in a decree for plaintiffs, and defendants appeal.—*Affirmed.*

*Lloyd Thurston* and *O. M. Slaymaker,* for appellants.

*Temple & Temple,* for appellees.

DEEMER, J.—Prior to May 9, 1893, one Anna Pritchett was the owner of the E ½ of the SE ¼ of what was known as Block 15 in the original town of Osceola. This tract was approximately 214 feet long north and south, and 107 feet wide. It was bounded on the east and south by city streets; and upon the north, there was an alley 20 feet in width, which ran through to another cross alley running north and south near the center of the block, but west of the west line of her property. On the date named, she conveyed to Jason Roberts, B. F. Garretson and W. H. Ridgway, 80 feet off the north side of her tract, the deed containing the following reservation:

"The said Anna Pritchett reserving the right on 10 feet of the west part of said described lot for a driveway, and is to build and maintain a gate at the northwest corner of said lot and at the north end of said driveway."

She retained the title to the remainder of the tract until October 1, 1913, when she sold the same to E. G. Banta, W.

N. Temple, J. F. McAuley, Elon Graves, J. F. Kierulff and Ernest Swan, as trustees of the Presbyterian Church of Osceola, and in the same deed she made the following transfer:

"And I hereby quitclaim, transfer, set over and relinquish unto the trustees herein all my right and interest in and to a certain right of way or easement over the west 10 feet of the north 80 feet off of the north side of the east ½ of Lot 6 in Block 15 in the original town of Osceola, Iowa, for a driveway. The intention being to transfer unto said grantees all my rights and privileges in and to said easement."

The original grantees of the north 80 feet of the property conveyed the same to the Osceola Sanitarium Company, and in their deed made this statement:

"One Anna Pritchett having a right of way or easement on 10 feet of the west part of said lot for a driveway, who has to build and maintain a gate at the northwest corner of said lot at the north end of said driveway."

On May 24, 1897, the Sanitarium Company conveyed the 80-foot strip by warranty deed to one Roberts, the deed containing this recital:

"Except an easement of a driveway over the west 10 feet of said premises, reserved to Mrs. Pritchett."

On February 20, 1902, Roberts conveyed the said strip to one Martin, the deed reciting that:

"One Anna Pritchett having the right of way or easement on 10 feet of the west part of said lot for a driveway, she to build and maintain a gate at the northwest corner of said lot at the north end of said driveway."

On November 19, 1902, Martin conveyed the strip to one Sells, and his deed contained the following:

"One Anna Pritchett having a right of way or easement on 10 feet of the west part of said lot for a driveway, she to build and maintain a gate at the northwest corner of said lot at the north end of said driveway."

Sells conveyed the strip to one Morton, January 24, 1910, this deed containing the following:

"Subject to a right of way or easement of Anna Pritchett over the west 10 feet of the said lot just above described for a driveway, also the right of the said Anna Pritchett to maintain a gate at the northwest corner of said lot, being at the north end of said 10-foot strip."

Thereafter, and on November 26, 1910, Morton conveyed the property to defendant, W. D. Harken, the conveyance containing the following:

"Subject to a right of way or easement of Anna Pritchett over the west 10 feet of said lot just above described for a driveway, also the right of the said Anna Pritchett to maintain a gate at the northwest corner of said lot, being at the north end of said 10-foot strip."

The remainder of the property was purchased by the trustees of the Presbyterian Church of Osceola for church purposes. When they purchased, there was a house upon it, which was moved over to within a few inches of the north line, and which was intended for use as a parsonage; and at the time this suit was commenced, or when it was reached for trial, an excavation was being made on the south end of the property, preliminary to the erection of a large church thereon. It was proposing to use the 10-foot strip in the other lot as a driveway to haul supplies for the parsonage and material for the construction of the church, when defendants objected, and, it is claimed, obstructed the said strip. This action is to enjoin defendants from interfering with plaintiff in the use of the 10-foot strip as a driveway to the parsonage and for material with which to erect the church.

I. It is conceded that the Presbyterian Church is a voluntary religious association, which has never been incorporated under the laws of this state, and defendants insist that, as such, it has no legal entity, and no right to sue or be sued. The society might easily have been incorporated under Secs. 1642 and 1652 of the Code, but it never did so and, under the law, it is well settled that it has no legal

1. PARTIES: plaintiffs: unincorporated association: trustees.

existence, and can neither sue nor be sued.  *Nightingale v. Barney,* 4 G. Gr. 106 ; *Pipe v. Bateman,* 1 Iowa 369 ; *Steamboat v. Wilson,* 11 Iowa 479 ; *Westbrook v. Griffin,* 132 Iowa 185 ; *St. Paul Typothetæ v. St. Paul Bookbinders' Union* (Minn.), 102 N. W. 725.  In the case last cited it is said :

"But whatever may be the law applicable to such associations generally, there is one respect in which the authorities are agreed, and that is that at common law they are not, whether organized for business or other purposes, entitled to recognition in the courts in their association name.  It is well settled that, in the absence of a statute otherwise providing, to be entitled to conduct judicial proceedings in court, a party litigant must be either a natural or artificial person.  The rule is correctly stated in 22 Encyc. Pl. & Pr. 230, where, in speaking of unincorporated societies, such as those here involved, it is said that such societies cannot maintain an action in their association name, but must sue in the name of the individuals composing them, however numerous they may be.  Such societies, in the absence of statutes recognizing them, have no legal entity distinct from that of their members.  The rule is followed by an unbroken line of authorities, though a different rule has been applied in many of the courts in actions purely of an equitable nature.  On the question generally, see Niblack on Societies, 183 ; *Richardson v. Smith,* 21 Fla. 336 ; *Proprietors of Mexican Mill v. Yellow Jack Mining Co.* (Nev.), 97 Am. Dec. 510 ; *Detroit Schuetzen Bund v. Detroit Agitations Verein,* 44 Mich. 313 (6 N. W. 675, 38 Am. Rep. 270) ; *Danbury Cornet Band v. Bean,* 54 N. H. 524 ; *Mayer v. Journeymen Stone Cutters,* 47 N. J. Eq. 519 (20 Atl. 492) ; *Nightingale v. Barney,* 4 G. Gr. (Iowa) 106 ; *Barbour v. Albany Lodge,* 73 Ga. 474 ; *Steamboat Pembinaw v. Wilson,* 11 Iowa 479."

In *Westbrook's* case, supra, we said :

"The entire effect of the petition is that they are suing for an unincorporated society, and we have held that a suit of such character cannot be maintained.  *Pipe v. Bateman,* 1

Iowa 369; *Drake v. Board of Trustees*, 11 Iowa 54. As we understand the record, neither Hendrix nor H. H. Westbrook are named as parties to this suit, and the question arises whether the plaintiff may maintain this action for them against their copartners. We think not. Code Section 3459 provides that every action must be prosecuted in the name of the real party in interest, except that 'a party with whom or in whose name a contract is made for the benefit of another may sue in his own name.' As we have already said, the plaintiffs cannot maintain an action for the unincorporated association, nor can they maintain an action for the two parties named because of their connection with the Muscatine & Louisa Company, hence they are not within the exception made by the statute, and appear as parties plaintiff having no possible interest in the action.''

But Sec. 3459 of the Code expressly provides that an action may be prosecuted in the name of a ''trustee (or trustees) of an express trust . . . without joining with him the party for whose benefit the action is prosecuted.'' Here, the action was prosecuted in the name of the Presbyterian Church of Osceola by its trustees, naming them, and it clearly appears from the petition, which was substantiated by the proofs, that these named trustees were trustees of an express trust created by deed, and we are of opinion that the action will lie. These trustees held the legal title and the right to the use and enjoyment of the property for the benefit of the said Presbyterian Church, and it makes no difference, in so far as the question now before us is concerned, whether this *cestui que trust* was an unincorporated voluntary association, a partnership, or what not; for the members thereof were entitled to the benefit of the trust, and equity would compel the trustees in a proper action to recognize the trust. It is doubtless true, under the authorities cited, that this voluntary association could not maintain the action in its own name, and this suit doubtless should have been in the name of the trustees for the use and benefit of the *cestui que trust*, or simply

in the name of the trustees; but it is extremely technical to say that the action really brought by these trustees was merely in the name of the unincorporated society. The name of the church may be eliminated, and we still have an action by the trustees to enforce whatever rights they may have as such trustees. In none of the cases cited and relied upon by appellants was there an express trust. On the contrary, in each the suit was brought by the association alone, or by the association through its officers or some of its members, and in none did it appear that these members or officers were trustees of an, *express* trust. This distinction seems to be recognized and pointed out in *Arts v. Guthrie,* 75 Iowa 674, 677. In that case, it is said:

"The St. Peter and St. Paul Catholic Congregation was an unincorporated association, and, so far as the facts are shown, was not competent to join as party plaintiff; but that fact did not entitle the defendants to have the action dismissed. *District Twp. of White Oak v. District Twp. of Oskaloosa,* 44 Iowa 517. It is shown that the three plaintiffs who sue as trustees were appointed by the German portion of the original congregation, after the separation, to collect claims due to the new congregation. That is what they are seeking to do in this case, and we think they are competent and entitled to do so. Code, § 2544; *Laughlin v. Greene,* 14 Iowa 94."

In *Laughlin v. Greene,* 14 Iowa 92, 94, this court said:

"But the point most relied upon is that this action should have been brought in the name of the 'Trust Company,' and not in the name of Laughlin, trustee. The 'Trust Company' is a voluntary association, possessing no corporate powers, and least of all can it sue and be sued in that name. This action must be maintained, therefore, if at all, for the benefit of the company, in the name of the trustee. And this we think is allowable, under Sec. 2758 of the Revision. Plaintiff is the trustee of an express trust, within the meaning of the statute. The demurrer does not raise the question as to the sufficiency

of the petition in showing how and when Laughlin was made trustee. It is averred that he was and is such trustee, and this is admitted by the demurrer. In the case of *Nightingale v. Barney,* 4 G. Greene 106, the note was given without consideration, and not only belonged to a voluntary association, but plaintiff had no interest therein as trustee or otherwise. The two cases are not parallel."

Treating the action as one brought by the trustees of an express trust, we think it will lie, and that defendants' objection to their right to sue is without merit.

II. The next question is as to the nature of the right reserved to Anna Pritchett in her deed to Roberts *et al.,* in the year 1893, which right was preserved to her in all subsequent deeds down to and including the one made to defendant, W. D. Harken. Was it merely the creation of a reservation or exception personal to Anna Pritchett which lasted only for her life, or was it an easement which became appurtenant to the other land owned by her in the SE ¼ of Block 15, which passed under the grant to plaintiffs, as trustees for the church?

2. DEEDS: exceptions and reservations: appurtenant rights: presumption: burden of proof.

The instrument creating the right is in form a reservation to Anna Pritchett for a driveway, and the words "heirs or assigns" are omitted. Our statute provides, however, that the term "heirs" or other technical words of inheritance are not necessary to create and convey an estate in fee simple. Code Section 2913; *Karmuller v. Krotz,* 18 Iowa 352. Notwithstanding the language of this section, it is held that not every reservation or exception will be treated as creating an estate of inheritance. *Husted v. Rollins,* 156 Iowa 546. Much depends upon the intent of the parties, as well as upon the nature of the reservation. *Zimmerman v. Kirchner,* 151 Iowa 483; *Karmuller v. Krotz,* supra; *Teachout v. Capital Lodge I. O. O. F.,* 128 Iowa 380. If the reservation be of a mere license, it creates but a personal right, even if words of inheritance be used. *Garrison v. Rudd,* 19 Ill. 558. But if

it was intended as creating an easement for the benefit of the property yet remaining in the grantor, it becomes an appurtenance to that property and passes by deed thereto to any grantee thereof. *Teachout v. I. O. O. F.*, supra. Here, there was not only a deed of the remaining property, but also an express conveyance of the easement or of whatever rights were created by the deed of Anna Pritchett to Roberts *et al.* And as we have said, these rights, whatever they may be, were recognized in all subsequent transfers of the 80-foot strip of property. Courts have experienced considerable difficulty in determining whether or not such provisions as are found in this deed to Roberts *et al.* create a reservation or a mere exception, and if a reservation, whether it be personal to the grantor, or creates an inheritable easement which may be conveyed with the lot to which it is an appurtenance.

A reservation is never of a part of the estate itself, but is something taken back out of that already granted, as rent, or the right to cut timber or to do something in relation to the estate, while an exception is of some part of the estate not granted at all. *Youngerman v. Board of Sup. of Polk County,* 110 Iowa 731; *Stone v. Stone,* 141 Iowa 438. It is clear, under this definition, that the clause in the deed in question was in terms a reservation to the grantor, and not an exception; but it was a reservation for the benefit of the remaining land, and gave access to the rear thereof from an alley. Such a reservation is universally held to create a permanent right for the benefit of the principal estate, whoever may be the owner, and constitutes a part thereof. See the *Karmuller* case, supra; *Dennis v. Wilson,* 107 Mass. 591; *Randall v. Latham,* 36 Conn. 48; *Tinker v. Forbes* (Ill.), 26 N. E. 503; *Smith v. Porter,* 10 Gray (Mass.) 66. In the *Dennis* case, supra, the Supreme Court of Massachusetts said:

"If the nature of the right, as appurtenant or in gross, depended upon its duration or inheritable quality, it might be necessary to consider whether the clause in this deed is one

3. DEEDS: exceptions and reservations: distinctions.

of exception, carving the way out of the premises described in the deed, and retaining it in the grantor as a part of his former estate; or whether it created a new right in the land of the grantee by way of reservation or implied grant. But we do not think it is so dependent. Even if it were conceded that the clause in question is to be construed as one of reservation strictly, and that, for want of words of inheritance, the right is limited to the life of the grantor, it does not follow that it is a mere personal right, not assignable. Its character must be determined by the purposes for which the way was intended to be used. Those purposes being ascertained from the terms of the deed, aided, if necessary, by the situation of the property and the surrounding circumstances, the deed is to be construed accordingly.''

Under such statutes as the one to which reference has hitherto been made, a reservation is presumed to be an appurtenance to the property which is to be reached over the granted land, and the burden is upon him who claims that it was personal only to prove it. *Smith v. Porter*, supra; *Painter v. Pasadena Land & Water Co.* (Cal.), 27 Pac. 539. See, also, *Cassens v. Meyer*, 154 Iowa 187; *Wynans v. Carrell*, 154 Iowa 582.

Of course, where the purpose of the exception or reservation is stated, the use of the property is limited to that purpose, and a subsequent vendee can exercise no greater right than that reserved. In this case the right was for a driveway, and this right cannot be enlarged by the plaintiffs herein. It can be used only for a driveway to reach the rear of this lot, and the travel must be confined to the 10-foot strip.

4. EASEMENTS: extent of right: deed controlling.

III. It is claimed that Anna Pritchett never accepted or used the easement; that she never erected the gate, as she promised to do; and that she abandoned the same. Of course, an easement may be abandoned by the grantee thereof, but mere non-user, unless for a period of 10 years, will not raise

a presumption of abandonment; and, even if for the full stat-
utory period, such non-user is subject to ex-

5. EASEMENTS: abandonment: non-user: limitation of actions.

planation, and if it appears that the owner had no intention of abandoning his easement, no abandonment will be found. See cases cited in 14 Cyc. 1186. There is no sufficient proof of abandonment in the case.

As to Mrs. Pritchett's failure to erect the gate, the testimony shows that all fences, save the one on the west end of the 80-foot strip, were removed. Mrs. Pritchett made use of the back part of this strip frequently and as

6. EASEMENTS: termination: noncompliance with conditions.

occasion demanded, although, as the strip was not fenced, the travel was not confined thereto, and the parties who owned the entire strip never objected to such use as she made of it. The condition as to the erection of the gate was a subsequent one, and there never was any attempt at forfeiture for noncompliance when a gate was necessary, and, since the fences were removed, no occasion existed for the gate. Her failure to erect the gate did not destroy the easement. She placed a small privy near the northwest corner of the lot retained by her, so that she could not confine the travel to this 10-foot strip at its southern end without great difficulty; and a telephone company placed a pole at the north end of the strip, so that one wishing to use the strip with a team would have to encroach upon some part of the 80-foot strip not covered by the reservation, but to this neither defendant nor any of his grantors made any objection.

IV. Again, it is claimed that plaintiffs and their grantors have lost title to the strip by adverse possession. It is true that defendants have lately sought to obstruct the use of the strip, but both they and their grantors

7. ADVERSE POSSESSION: hostile character of possession: easement: recognition of right.

have in writing expressly acknowledged the presence of the easement in their deeds of conveyance down until the last one was made, in 1910. It is manifest that their claim of

the bar of the statute is without merit; moreover, their use of the property has not been open, exclusive and hostile for the full period of 10 years.

V.   Neither defendants nor their grantors have expended any money nor done anything on the strength of an abandonment of the easement which amounts to an estoppel.   Plaintiffs and their grantor have used the driveway as occasion demanded, with the knowledge of defendants and their grantors, and there is no basis for a claim of estoppel.

8. ESTOPPEL: grounds of estoppel: change of position: easement: abandonment.

VI.   Again, it is argued that this 10-foot strip, in connection with a narrow 20-foot alley, is useless, for the reason that an ordinary wagon cannot be used to make the turn without encroaching upon other ground.   Of course, plaintiffs must confine themselves to the strip, and, if they go outside thereof, they are liable for trespass; but this is no reason for denying them such rights as they have, to use it for the purpose of a driveway.   If they cannot use an ordinary wagon thereon, they may use other vehicles; and, in any event, defendants cannot close the strip because they think plaintiffs cannot use it for the purposes for which it was reserved.   As already suggested, plaintiffs must confine their use to the purpose for which it was reserved, to wit, a driveway whereby to go from the alley on the north to their property on the south of the 80-foot strip, and they must not trespass upon other lands.   The decree, as we think, safeguards defendants' rights; but, if there be any doubt as to this, defendants are not complaining of the fault, and it should be so construed as to give plaintiffs nothing more than the rights the deeds reserve.   If at any time a fence should be erected so as to necessitate the use of a gate at the north end, plaintiffs must erect the same.   The only doubt in the case relates to the question of the right of the plaintiffs to sue.   Treating the plaintiffs as the trustees of an express trust, we think it sufficiently appears that they, as trustees, are

9. EASEMENTS: extent of right: inadequate easement.

parties plaintiff, and the church may be disregarded as a party, as was done in one of the cases heretofore cited. To hold that no one but the church is a party plaintiff and that the action should be abated on this ground is overtechnical. Taking the allegations of the petition as a whole, it appears that the named trustees are trustees of an express trust, and that they brought this action as such.

The decree has full support in the testimony, and it must be and it is—*Affirmed.* .

EVANS, C. J., LADD and PRESTON, JJ., concur.