The bill filed herein is a statutory bill to quiet title. The primary issue is whether certain land now owned by complainant at Ocean City, the title to which extends to high water mark of the Atlantic ocean, is subject to the obligations of certain restrictive covenants contained in what is commonly known and referred to as the Ocean City boardwalk easement deed, which deed was executed in the year 1904 by the several owners of the ocean front, among whom *Page 367 
was complainant's predecessor in title. These covenants restrict the erection of buildings, except certain piers, oceanwards of the boardwalk. The boardwalk over the entire route described in the easement deed was completed in the year 1905.
In 1928 accretion on the ocean front had caused the ocean to recede so far that the municipality deemed it advisable to relocate the boardwalk about three hundred feet oceanward. A new boardwalk, in lieu of the old one, was then built by the city at the new location then determined upon, and the intervening space in that manner was thrown open to the land owners for building purposes up to and connecting with the new boardwalk.
Complainants having refused to consent to the proposed relocation of the boardwalk, the right to locate it across its property was acquired by the city by condemnation pursuant to the statute for that purpose. Unless the restrictive covenants in the easement deed signed by complainant's predecessor in title in 1904 are still operative, as against complainant, as to the territory outside of the new boardwalk, complainant will be privileged to build any structure he may wish upon that territory; but if still so operative, as defendant municipality claims, the bill must be dismissed. That is the concrete issue here presented.
The easement deed of 1904 here in controversy, is in its general nature similar to the Atlantic City boardwalk easement deed which has been construed by this court and by our court of errors and appeals in many of its aspects. Like the Atlantic City deed it was authorized by the act of 1889 (P.L. 1889 p. 206) and its several supplements. The supplement of 1896 (P.L. 1896p. 18) authorized its relocation. These several acts and supplements are referred to in City of Atlantic City v.Associated Realties Corp., 73 N.J. Eq. 721, and are compiled in1 Comp. Stat. p. 1064 et seq. The covenants contained in the Ocean City easement deed were, in general scope and purpose, like the covenants in the Atlantic City easement deed, and briefly may be referred to in the language of the court in Evans v. NewAuditorium *Page 368 Pier Co., 67 N.J. Eq. 315 (at p. 318), as follows: "Each of the co-grantors gave up that part of his own land which was covered by the boardwalk strip in consideration of a like gift made by his co-grantors. The attending covenants, securing light, air and view, were obtained for a like consideration. It was a general scheme of public improvement in which all participated. Its form was a covenant with Atlantic City, but in fact it was a gift by the co-grantors to the public and to each other. Atlantic City paid nothing to the grantors, but it spent large sums in building the boardwalk." The same general view is expressed by our appellate court in City of Atlantic City v. AssociatedRealtors Corp, supra, as follows: "The covenants therein contained show that the owners of the beach-front lands were actuated by a common purpose to carry into effect by their joint action a general plan of mutual benefit to themselves and to the public to preserve an open view oceanward from the elevated public walk, and to that end to restrict the use of the land, and the business to be conducted, on the ocean side of the walk." And (at p. 727) the covenants of the grantors are defined as "a grant to the public of a right in the nature of an easement; it indirectly by negative covenant, grants a right of light, air and view over and across the oceanward land from the boardwalk." These views of the general purpose, scope and effect of the covenants contained in the Atlantic City easement deed are equally applicable to the Ocean City easement deed, here in question, and were operative to fasten the easements so defined upon the land owned by complainant's predecessor in title outside the 1904 boardwalk to the exterior limits of its title.
The relocation of the boardwalk in 1928 was made possible, so far as the land now owned by complainant is concerned, by the condemnation of a new right of way for a new boardwalk, in lieu of the old one, across complainant's land oceanward of the old location. That condemnation, for the purpose of relocation, and the construction of the new boardwalk in lieu of the old one upon the strip so condemned, was pursuant to and as contemplated by the provisions of *Page 369 
the act of 1896, already referred to as existing at the time the 1904 easement deed was executed, and can only be appropriately contemplated as embraced within the general scheme and purpose of the easement deed as heretofore defined by our court of errors and appeals. The notion that the dedicatory scheme effectuated by the easement deed contemplated a release of the covenants and abandonment of the entire plan of beach front protection should the city exercise its statutory right to relocate the boardwalk further oceanward, seems utterly inconsistent with the primary aim of the whole enterprise. Indeed one provision of the easement deed enabled the shore owners to compel the city to relocate the boardwalk further oceanward in the event of accretions; clearly neither that relocation nor a similar relocation at the instance of the city under the act then existing for that purpose was contemplated by the parties as the termination of the whole scheme of beach front protection embodied in the covenants. When the whole enterprise and its purpose as defined in the easement deed is considered, the removal of the boardwalk to its new location can be regarded as in no way operative to modify or disturb the easement for air and view already referred to as extending to high water mark, then and now oceanward of the place of relocation, unless, of course, some provision of the easement deed should be found to indicate to the contrary. Complainant, however, points to the final clause of the easement deed as operative to terminate these restrictive covenants. It reads: "Provided further, however, and it is hereby expressly covenanted and agreed between the party of the first part and the party of the second part, their heirs, executors, successors and assigns, that the foregoing covenants shall attach to and run with the land and premises hereby granted and the lands on the ocean side thereof so long as the same shall be used for the purpose of a street and elevated walk, and that the same may be enforced or its breach or non-observance may be restrained or enjoined at any time by either of said parties to this agreement, their heirs or assigns." The contention is that the words "the same," above quoted, refer to the boardwalk at *Page 370 
the place originally located, and do not embrace the idea of its possible relocation on the land oceanward of the original location. Since the statute as well as the easement deed contemplated a possible relocation of the boardwalk, and the easement deed recites the existence of that statute, and the general scheme and purpose of the instrument embraced the preservation of light, air and view on the beach front, I am unable to attribute to the language above quoted the significance suggested. As already stated, it seems impossible to contemplate a purpose of the parties to release the beach from these highly beneficial building restrictions in the event of a relocation of the boardwalk oceanward, and especially since such relocation enabled the owners to utilize the intervening space caused by the relocation for building purposes up to and connected with the new boardwalk.
Complainant contends, however, that irrespective of the foregoing considerations, a certain provision of the easement deed immediately preceeding that above quoted, is operative to terminate the restrictive covenants of light, air and view here in controversy. That clause reads as follows: "Provided further, however, and it is hereby expressly covenanted and agreed between the party of the first part, and the party of the second part, that this grant shall cease and become void and all rights hereby granted to the party of the second part hereunder shall determine on the first day of July, 1906, unless the party of the second part shall cause this deed or a copy hereof to be executed and delivered to the party of the second part by all the owners of land along said proposed location, or shall cause the lands of the owner or owners of any property along the said strip of land who shall refuse to sign and deliver a grant to said city in all respects and conditions the same as the within grant, to be condemned and title taken thereto by party of the second part before said first day of July, 1906; in case of condemnation, the time aforesaid shall be extended such period of time as may be consumed by condemnation proceedings against any owner or owners." The evidence discloses that all of the beach front property owners, except two (each owning only seventy-five *Page 371 
feet of front) signed the easement deed of 1904, and condemnation proceedings were, with reasonable promptness, brought to condemn the right of way for the boardwalk across the fronts of these two owners at the location defined in the easement deed. These condemnation proceedings have never been concluded. The claim of complainant is that the delay in conducting these condemnations to a conclusion is a breach of the stipulation above quoted and operative to release the covenants of the easement deed. The complaint is not that the condemnation proceedings were not promptly brought; the claim is that they were not promptly concluded. If it should be here assumed that the great delay in concluding these condemnation proceedings should be regarded as a literal breach of the stipulation above quoted, the unsubstantial nature of the breach claimed by complainant is apparent from a consideration of the circumstances and its total want of effect on complainant's interests. The boardwalk was promptly built in its entirety on the line defined in the easement deed, including that part crossing the land of the two property owners who had not executed the deed, and was used by the public until superseded by the new boardwalk as relocated and constructed in 1928. The condemnation proceedings, had they been more promptly concluded, would have accomplished no more than to sanction that occupancy during that period, since only the right of occupancy by the boardwalk for the use of the public could be condemned. The condemnation contemplated by the easement deed did not and could not embrace the rights conferred by the covenants of the easement deed relating to the land outside the boardwalk. 1Comp. Stat. p. 1064 et seq. It follows that the failure of the city to conclude the condemnation proceedings referred to for the old right of way across these two lots did not in the slightest degree affect the interests of complainant's predecessors in title or complainant's present interests. The prompt construction and use by the public of the boardwalk on the land which was being condemned served the spirit of the stipulation and in practical operation was the equivalent of a condemnation, and in that sense a *Page 372 
substantial compliance. When the boardwalk was relocated, of course no further use for the former location existed. This doctrine of substantial compliance necessarily inheres as well against a claim of forfeiture for breach of condition subsequent as in the more frequent cases of construction contracts. See 19C.J. 944 § 155. In Presbyterian Church v. Harken, 177 Iowa 195,
the condition subsequent was to maintain a gate; no attempt was made to forfeit the easement when a gate was necessary; when the fences were removed and no gate was necessary the failure to maintain it was held to be inadequate to support a forfeiture.
In connection with this claim of complainant's that the failure to promptly conclude the condemnation proceedings for a right of way for the boardwalk across these two lots was a breach of the stipulation above quoted, it must be borne in mind that the stipulation in the easement deed touching condemnation is a condition subsequent, and complainant's position is that of one seeking forfeiture because of its breach. Complainant was not a party to the condition, but holds under mesne conveyances from a grantor in the easement deed. At common law complainant as a purchaser of the fee could not avail himself of the forfeiture, however clearly it should be established. The rule was that none but a party to the deed and his heirs could take advantage of the condition. The right could not be assigned. 2 Washb. Real Prop.
(4th ed.) 14; 2 Devlin on Deeds § 969. This rule has been specifically recognized in this state in Den, ex dem. Southard
v. Central Railway Co., 26 N.J. Law 13 (at p. 21). But the act of March 14th, 1851 (P.L. 1851 p. 282; 2 Comp. Stat.p. 1539) makes such expectancies assignable. Complainant acquired its title in January, 1927 — its deed of conveyance containing a recitation that it was subject to the provisions of the easement deed — over twenty years after the boardwalk had been built on the entire location contemplated by the easement deed, including the location over the two lots on which the condemnation proceedings were not concluded, and during all of that period that boardwalk was in use by the public throughout its entire length, and thereafter *Page 373 
until the relocated boardwalk was completed. Complainant's bill was not filed until March, 1930, and by it complainant now seeks a decree which must have for its foundation a forfeiture of the restrictive covenants of the 1904 easement deed based upon the failure of the city to conclude the condemnation proceedings referred to. The rule is well established that the right to assert a forfeiture for non-compliance with a condition subsequent may be waived by the conduct of the parties otherwise enjoying the right. This rule is stated in 2 Devlin on Deeds
§ 959, as follows: "The waiver of a forfeiture may be inferred from the neglect of the party entitled to the estate to assert his claim in a reasonable time after the termination of the estate." In Washburn on Real Property, Ludlow v. New York andHarlem Railroad Co., 12 Barb. 440, is reviewed in support of the rule as follows: "A grant to a railroad company of land was upon condition that the road should be completed by a certain time, which was not done, and after that, the grantor, knowing the fact, suffered the company to go on and incur expenses in constructing their road, and made no objections; it was held to be a waiver of the condition of forfeiture." See, also, Kenner
v. American Contract Co., 9 Bush. (Ky.) 202, holding that a waiver will be inferred unless the right is asserted within a reasonable time, and especially where improvements are made, and declaring that forfeitures are not favored by the courts. In the present case, as already pointed out, the 1904 boardwalk was promptly completed as planned throughout its entire length, including the location across the two lots whose owners had not signed the easement deed, and was maintained throughout its entire length until the year 1927 to 1928 when it was superseded by the construction of the new relocated boardwalk along the entire front. During that period complainant's predecessors in title made no claim of forfeiture arising from delay of condemnation or otherwise, and in 1907 complainant purchased expressly subject to the conditions of the easement deed and the new relocated boardwalk was constructed at the great cost to the city disclosed by the evidence, and not until long *Page 374 
after its completion and continuous use has complainant sought to enforce the forfeiture now claimed. Accordingly, even should it be assumed that the delay in concluding the condemnation proceedings was operative to determine a right of forfeiture under the terms of the conditions contained in the easement deed, it seems clear that complainant and his predecessors in title must be deemed to have waived the right to now assert such a forfeiture.
A decree will be advised dismissing the bill.