## KARMULLER v. KROTZ.

1. **Contract: CONSTRUCTION.** In ascertaining the meaning of a contract it must be construed in the light of the circumstances which surrounded the parties when they entered into it.

2. **Easement: DEFINITION.** An easement is a service which one estate owes to another — or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate.

3. —— **RESERVATION.** A reservation is always of something issuing or coming out of the thing or property granted, and not part of the thing itself; and it must be to the grantor or party making it, and not to a stranger.

4. —— HEIRS AND ASSIGNS. The use of the words "heirs and assigns" are not essential in order to make a right of way reserved in a contract of partition appurtenant to the land.

5. —— CONTRACT CONSTRUED. A contract of partition contained the following stipulation: "It is further distinctly understood that the said J. shall have the *privilege* of a road through the land of the said B. so as to enable *him* to take the nearest and best road to D." *Held*, that notwithstanding the use of the word "privilege" and the pronoun "him," the agreement was not for a mere personal privilege, but was for an easement annexed to the land.

6. —— APPURTENANCE. An easement is an appurtenance to land which will pass to the heir, or by a devise or conveyance of the land, although not mentioned in the will or deed.

7. —— LOCATION. Where a stipulation for a right of way described the road as through the land of one party so as to enable the other to take the nearest and best road to a point named, it was held, that the location of the road should be determined by agreement, usage or acquiescence, and when thus located it cannot be changed by the one party without the consent of the other.

*Appeal from Dubuque District Court.*

FRIDAY, APRIL 14.

IT appears from the pleadings that the defendant Bernhart and his brother, John Krotz, owned, as tenants in common, and occupied a tract of land jointly. In the year 1854, by written contract signed by both parties, they agreed amicably to a partition of the land. It was divided into two parcels of unequal quantities, and the allotment was determined by chance. A written contract of partition was made instead of conveyances — the parties probably deeming this sufficient. This contract, after fixing upon the division line and the portion of land that should belong to each, contained the further agreement, that John Krotz was to be allowed the privilege of a road and landing upon the bank of the Mississippi river at or near the mouth of Cattese creek; the occupancy of the

East room of the dwelling house upon Bernhart's portion for the term of one year, and the use of the well of water so long as John may require it.

"It was also further distinctly understood that the said John Krotz should have the privilege of a road through the land of said Bernhart, so as to enable him to take the nearest and best road to Dubuque."

This agreement was duly signed and recorded, and under it each party took possession of that portion of the land set apart to him. John continuing, after he had moved on his part, to use the water from the well, the road to the landing and an old road across the land of Bernhart to reach the nearest road to Dubuque. In 1857, John Krotz, disregarding or overlooking the partition agreement, sold to complainant all his right and title to the undivided half of the tract as owned by the brothers prior to the division, together with all the improvements thereon. The division lines recognized by the brothers in their agreement, was not referred to in the deed, nor was any reference made to the right of way granted to John, or to the use of the well. Under this deed the complainant took possession of the portion set apart to John, and used the well and road across Bernhart's land until a short time before the commencement of this action (A. D. 1861), when the said Bernhart notified complainant that he could no longer use the same, and was about to fence up the said road. The complainant brought this action for an equitable partition of the land, and for an injunction staying the defendant from closing said road, and preventing the free use of said road, and asking that the said privileges be declared appurtenant to the premises so occupied and purchased by complainant.

The defendant answered, admitting the making of the partition agreement, and that in pursuance thereof, each of them went into possession of their respective portions,

but claims the "privileges" contained therein were personal, and could not be transferred by John. He, defendant, denies that the roads, as claimed by plaintiff, were located between him and John, and alleges that by virtue of the conditions of the agreement, a certain other road was laid out for and accepted by John.

It appears that after a portion of the evidence was taken on both sides, that complainant was willing to regard the partition made by the two brothers as binding upon him, and abandoned his claim for another partition and the right to use the well, and the question as to the *right of way* was the only one finally submitted.

Five propositions were submitted by the chancellor to the determination of the jury, and upon each of these their finding was favorable to the complainant; and a decree being entered thereon, defendant appeals.

The other facts necessary to an understanding of the case will be found stated in the opinion.

*J. M. Monroe* for the appellant.

*D. E. Lyon* for the appellee.

DILLON, J. — The agreement of partition between the brothers Krotz contained stipulations in respect to two roads as follows:

1. "John" (under whom plaintiff claims) "has the privilege of a road and landing upon the bank of the Mississippi river, at or near the mouth of Cattese creek."

2. "It is further distinctly understood that the said John Krotz shall have the privilege of a road through the land of the said Bernhart, so as to enable him to take the nearest and best road to Dubuque."

John afterwards conveys to the plaintiff, making no mention of these rights of way or road.

The questions in the case are these:

1. Are the rights of way provided for in the partition agreement, in gross, that is, *personal to John*, or, differently stated, are they *appurtenant to the land* which was set apart to John?

2. If appurtenant, did these rights of way pass to the plaintiff by his deed from John, they not being mentioned or referred to therein?

3. If they did thus pass to the plaintiff, what is the *location* of the road secondly above mentioned?

Of these briefly in the order above stated:

1. Is the right of way, under the agreement, personal, or is it annexed to the land? This depends upon the proper construction of the agreement. This is to be read in the light of the circumstances which surrounded the parties when they made it. Placing ourselves in the position of the parties, we aim to discover their intention. (*White* v. *Crawford*, 10 Mass., 183, and cases below cited.) First, we are to look at the circumstances: The brothers own the land together; they agree to divide it, each to take his portion, in severalty. The portion each was to receive was determined by chance. Before the partition each had the right to use the roads. By the partition, John's right to use any portion of the land which fell to his brother, for a road or otherwise, would at once cease unless expressly reserved. Two outlets would naturally be desired by an owner of the tract which fell to John — one to the river, and one to market — these lying in different directions. The lay of the ground is such as almost, if not quite, to preclude John, or the owner of his parcel, from reaching the river except through Bernhart's land. So the direct and best way to reach Dubuque was by the road used by Bernhart, and through the land which he obtained. The necessity for these roads was not merely temporary, but permanent. John needed

*1. CONTRACT: construction.*

these roads no more than any other owner of the same land would need them. Bernhart would have to use roads for these purposes. The injury to his tract in consequence of an easement over it in favor of the other, would be trifling compared to the injury to the other tract, in consequence of having no outlet. These circumstances tend to show that it is reasonable to suppose that the stipulation concerning the roads was not temporary and personal, but permanent, and in favor not so much of John as of the land he took.

Again, the other privileges obtained by John as to the occupation of a room in Bernhart's house, and the use of the well on Bernhart's portion, are limited in duration. Why not have made similar provisions as to the roads, if the privilege as to these was likewise limited?

Again, defendant avers in his answer that, in fencing his land, he left upon the south side thereof twelve feet in width across the same for a roadway for John. This tends, though of course not very conclusively, to show that the defendant made provision of a permanent character for a right of way for John. Again, defendant admitted to a witness that the reason why he had obtained the most land in the division, was "because his was more hilly, and, besides, he had to give his brother a road," &c.

Again, defendant did not, for several years after plaintiff's purchase, question his right to use the road.

But without attaching controlling importance to these circumstances, and looking only to the agreement in the light of recognized legal principles, we feel quite clear in holding that the rights of way are appurtenant.

The right stipulated for by John was an easement, or, in the language of the civil law, a *service real*, defined to be

2. EASE-
MENT:
definition.
"a service which one estate owes to another, or the right of doing something or having a privilege in one man's estate for the advantage and convenience

of the owner of another estate. To constitute such a ser-vice there must be two estates, the one giving, and the other receiving the advantage." See *Morgan* v. *Mason*, 20 Ohio, 409; Angell on Water Courses, § 142.

The provisions concerning these roads in favor of John are in the nature of a *reservation* by him when parting with his interest in the other tract. "A reserva-tion is always of something issuing or coming out of the thing or property granted, and not part of the thing itself, and it must be to the grantor or party execut-ing it and not to a stranger." *Borst* v. *Empie*, 1 Seld., 33, 38.

3. ——
reserva-
tion.

By our statute (Rev., § 2208) "the term *heirs* or other technical words of inheritance are not necessary to create and convey an estate in fee simple." And a deed to A. B. is in this State a deed to him, his heirs and assigns. From this we may deduce the reason-able inference, that the use of the words *heirs or assigns* would not be absolutely essential in order to make the right of way in question appurtenant to the land. See on this point *Pierson* v. *Armstrong*, 1 Iowa, 282, 294, and the cases below cited.

4. ——
Heirs and
assigns.

Defendant's counsel urges that the use of the word "*privilege*" tends strongly to show that it was intended to be personal only — the language being, that "the said John Krotz shall have the *privilege* of a road through the land of the said Bernhart so as to enable *him* to take the nearest and best road to Dubuque." And so of the use of the word "*heirs*" — "to enable *him* to take," &c.

5. ——
Contract
construed.

The use of these words does not establish the position contended for by the defendant.

This will be shown, and the true construction of the agreement in question illustrated by a brief reference to a few cases. In *Winthrop* v. *Fairbanks*, 41 Maine, 309, the grantor's deed, after the description, contained the

following clause: "Reserving forever for *myself* the *privilege* of passing with teams and cattle across the same in suitable places to the land I own south of the premises." Here were no words of inheritance; and yet the court held that the clause above quoted conferred upon the grantor, his heirs and assigns, as occupant of the remaining land belonging to him, "*south of the premises,*" the privilege of the ways reserved, these being considered as appurtenant to the land. To same effect, *Smith* v. *Ladd,* 41 Maine, 314, where the language was, "I do reserve a drift way (defined to be a "common way for driving cattle") from the county road on the east end of said lots," &c., and in which it was held that the reservation was for the benefit of the portion of the lot remaining in the grantor and appurtenant to that portion. To the same effect, also, where the reservation in a deed was of a right of "raising water for the benefit of *my* saw-mill." This was held to be a reservation commensurate with the interests of the grantor in the whole premises previous to the conveyance, and was not limited to his own life but would pass to his heirs or devisees. *Burr* v. *Mills,* 21 Wend., 290.

*Borst* v. *Empie,* 1 Seld., 33, affords a pertinent illustration of the correctness of the view we have intimated respecting the true construction of the agreement in question. The case was this: The grantors in a deed reserved (more properly *excepted*) "to themselves and their heirs and assigns" one and a half acres of land "on which the tannery is erected." Then follows this reservation on which the question arose: "And the said parties of the first part aforesaid do reserve *to themselves and their use* a certain well and water works laid down for the purpose of supplying the tannery aforesaid with water."

This was held good as a reservation, and "it constitutes," says the court, "an easement in the land which was granted by the deed, in favor of the part excepted from its opera-

tion, viz., the one acre and a half, as to which this right of water in the other land became appurtenant." And it was further held, notwithstanding the words of the reser-vation above italicised, that the right to the use of the well and water works was not limited to the parties making the reservation, but passed to their grantees of the one and a half acres of land, as incident or appurtenant to it, with out being particularly specified. The point that the reservation was personal, was distinctly made and over-ruled. (See also *Cathcart* v. *Bowman*, 5 Barr. Pa., 317; of contrary bearing, *Garrison* v. *Rudd*, 19 Ill., 558.)

II. If we are right in the conclusion that the road was not a personal privilege, but one *annexed to the land*, then it is an appurtenance and will pass to the heir, or by a devise or conveyance of the land, although not particularly specified in the will or deed. The use of the word *appurtenances* is not necessary, for being an incident, it passes with the grant of the principal thing. In point, *Morgan* v. *Mason*, 20 Ohio, 401; and see also *Kent* v. *Waite*, 10 Pick., 138; *Hinkliffe* v. *Kinnard*, 5 Bing. N. C., 1; *Atkins* v. *Bordman*, 2 Metc., 464; *United States* v. *Appleton*, 3 Sumn., 502; *Lansing* v. *Wiswall*, 5 Denio, 213; *Borst* v. *Empie, supra; Cathcart* v. *Bowman*, 5 Barr., 317.

6. —— Appurtenance.

III. The only other question in the case is, as to the *location* of the right of way. The agreement was, that "John Krotz should have the privilege of a road *through* the land of Bernhart, so as to enable him to take the nearest and best road to Dubuque." The place for the road not being designated, it become located by agreement or by usage and acquiescence; and when thus located it cannot be changed by the one party without the consent of the other. *Wynkoop* v. *Burger*, 12 Johns., 222; *Atkins* v. *Boardman*, 2 Metc., 457, 464.

7. —— Location.

The plaintiff claims that this road was located by agreement between the brothers, at a certain place *through* the land of the said Bernhart. On the other hand, defendant contends that it was located by agreement on the south end or side of his land. The testimony is conflicting and voluminous. The question was fairly and plainly submitted to the jury, who found distinctly against the defendant. It was a question which the jury was particularly competent to decide, and upon a careful and patient examination of the testimony, we have concluded, after some hesitation, that we ought not to disregard their finding.

Affirmed.