BOREK CRANBERRY MARSH, INC., Plaintiff-Appellant,

v.

JACKSON COUNTY,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2008AP1144. Oral argument February 9, 2010.
—Decided July 21, 2010.*

2010 WI 95

(Also reported in 785 N.W.2d 615.)

For the defendant-respondent-petitioner there were briefs by *Mark B. Hazelbaker* and *Hazelbaker & Associates, S.C.,* Madison, and oral argument by *Mark B. Hazelbaker.*

For the plaintiff-appellant there was a brief by *Dan Arndt* and *Arndt, Buswell & Thorn, S.C.*, Sparta, and oral argument by *Dan Arndt*.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals[1] reversing an order granting summary judgment to Jackson County.[2] In 1977, Carl Nemitz purchased an easement from the County granting him sand removal and water flowage rights to County land adjacent to his property. The water flowage rights were granted to "CARL NEMITZ, his heirs, and assigns" while the sand removal rights were granted to "the Grantee," who is described in the deed as "CARL NEMITZ." Nemitz later transfered his land, along with his sand removal rights and water flowage rights, to Julius and Darlene Borek (the "Boreks"), who then transfered them to Borek Cranberry Marsh, Inc. ("BCM").

¶ 2. When BCM attempted to exercise the sand removal rights (now almost 30 years after the original conveyance to Nemitz), the County objected on the grounds that the sand removal rights were non-transferable. BCM brought suit, and the circuit court agreed with the County that the sand removal rights were non-transferable because they had been granted to Nemitz alone, and not "Nemitz, his heirs, and assigns" as the water flowage rights had been granted. The court of appeals reversed, holding that Wis. Stat.

---

[1] *Borek Cranberry Marsh, Inc. v. Jackson County*, 2009 WI App 129, 321 Wis. 2d 437, 773 N.W.2d 522.

[2] The judge originally assigned to the case, Judge Gerald W. Laabs, recused himself because he drafted the easement at issue in this case. Judge John A. Damon presided in Judge Laabs' stead.

§ 706.10(3) (1977–78),[3] which makes words of inheritance unnecessary and creates a presumption in favor of transferability, required the court to interpret the deed as conveying transferable sand removal rights.

¶ 3. Thus, the question before us is whether the 1977 easement granted Nemitz a transferable right to remove sand from County land. We hold that it did. Wisconsin Stat. § 706.10(3) provides that every conveyance of an interest in land conveys full title to that interest unless the language of the conveyance indicates otherwise by express language or necessary implication. We conclude that the easement does not contain an express statement or necessary implication that only a limited, non-transferable right to remove sand was conveyed. We therefore affirm the decision of the court of appeals and remand for the circuit court to enter an order granting BCM's motion for summary judgment.

## I. BACKGROUND

¶ 4. In 1977, Carl Nemitz, who owned marsh land adjacent to forest land owned by Jackson County, purchased an easement from the County for $500.00. That easement granted Nemitz water flowage rights and sand removal rights to the neighboring County land for the purpose of cranberry cultivation on Nemitz's marsh.[4]

---

[3] All subsequent references to the Wisconsin Statutes are to the 1977–78 version unless otherwise indicated.

[4] Flowage refers to allowing water to flow on and off of the adjoining land. Flowage rights can be very important to cranberry cultivation because cranberries are grown in water, and at certain points in the process, the water in the bogs has to be drained off. Sand is also important to cranberry cultivation. When the cranberry marsh freezes over in winter, the ice on top

¶ 5. The deed granting Nemitz water flowage and sand removal rights is entitled "Easement for Flowage Rights" ("1977 deed").[5] It contains the following relevant language:

THIS EASEMENT, made this 12th day of May, 1978, between JACKSON COUNTY, a Municipal Corporation, Grantor, and CARL NEMITZ, of RFD 1, Warrens, Wisconsin, Grantee.

WITNESSETH, That for and in consideration of the sum of Five Hundred ($500.00) dollars, paid by the Grantee to the Grantor, . . . *the Grantor does hereby grant and convey to CARL NEMITZ, his heirs, and assigns, an easement for flowage* with full right and privilege to flow with water the following described lands situated in the Town of Knapp, Jackson County, Wisconsin . . . .

THAT *THIS EASEMENT, shall be perpetual* providing that the flowage rights hereby granted are being used for the purpose of cranberry culture.

AND, *the Grantor does hereby grant and convey to the Grantee the further right and privilege to remove*

---

of the bog is sanded—that is, covered with a layer of sand—so that when the ice melts, the sand settles, filling in under the cranberry plants so that the plants remain at an appropriate harvestable height, thereby optimizing production. Thus, both water flowage and sand are important in the cranberry industry.

[5] The "Easement for Flowage Rights" in the record before us is actually dated May 12, 1978. That document indicates that it was "given for the purpose of correcting an erroneous description as recorded in Volume 226 of Records, on page 751 and as Document #212830." The original deed is not in the record. However, the parties agree that the original deed was executed sometime in 1977, and that the deed in the record is identical to the 1977 document in all regards relevant to this case.

*sand from the above described lands* to be used for the purpose of cranberry culture upon the Grantee's adjacent lands.

(Emphasis added.)

¶ 6. In 1978, Nemitz sold the cranberry marsh to the Boreks. Besides transfering the land itself, the deed transfering the marsh from Nemitz to the Boreks ("1978 deed") also transfered the flowage and sand removal rights that Nemitz purchased from the County in 1977.[6] The Boreks later transfered the land and their interest in the flowage and sand removal rights to BCM.[7]

¶ 7. For decades, BCM used sand from its own land to supply its cranberry cultivation needs. At some point prior to the commencement of this suit, BCM informed the County that it intended to start removing sand from County land pursuant to the 1977 deed. The County disputed BCM's right to remove sand, arguing that the sand removal rights sold to Nemitz were personal to Nemitz and therefore not transferable to the Boreks or BCM.

¶ 8. On April 13, 2007, BCM filed suit in Jackson County Circuit Court, John A. Damon, Judge, seeking (1) a declaratory judgment that BCM is the legal owner of the sand removal rights; (2) compensatory damages in the form of lost profits; and (3) reimbursement of

---

[6] The 1978 deed stated in relevant part as follows: "The grantors further convey to the grantees, their heirs and assigns, all of their rights in and to an easement executed in favor of them by Jackson County concerning flowage rights and sand rights."

[7] The deed transfering the land and the flowage and sand removal rights from the Boreks to BCM is not in the record. Nevertheless, the parties agree that the transaction took place.

expenses arising as a result of the controversy. On cross-motions for summary judgment, the circuit court granted summary judgment to the County and dismissed BCM's claims. The court concluded that the necessary implication of the inclusion of "heirs and assigns" in the flowage grant and the omission of that language in the sand removal grant, is that the parties intended for the former to be transferable and the latter be personal to Nemitz (and thus not transferable to or enforceable by BCM).

¶ 9. BCM appealed. In a published opinion, the court of appeals reversed the circuit court, finding that the right to remove sand was not personal to Nemitz and was thus transferable to the Boreks and thence to BCM. *Borek Cranberry Marsh, Inc. v. Jackson County*, 2009 WI App 129, ¶ 14, 321 Wis. 2d 437, 773 N.W.2d 522. More specifically, the court held that the presumption of transferability of interests in Wis. Stat. § 706.10(3) applied because there was no express language to the contrary, and the omission of "heirs and assigns" in the sand removal grant did not create a necessary implication that the parties intended that right to be non-transferable. *Id.*, ¶¶ 12–14. It further held that the instruction in *Brody v. Long*[8] that deeds should be construed in favor of municipalities does not apply here because this case is not a close call. *Id.*, ¶ 16.

¶ 10. The County then petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

■

¶ 11. This case comes before us on summary judgment. We review the grant of a motion for summary

---

[8] 13 Wis. 2d 288, 108 N.W.2d 662 (1961).

judgment de novo, and apply the methodology specified in Wis. Stat. § 802.08. *Apple Valley Gardens Ass'n, Inc. v. MacHutta,* 2009 WI 28, ¶ 12, 316 Wis. 2d 85, 763 N.W.2d 126. That is, we determine whether there is any genuine issue as to any material fact, and if not, which party is entitled to judgment as a matter of law. *Id.*

¶ 12. The present case requires us to determine the meaning and scope of an easement. Easements are created by deeds, and we construe deeds according to the intentions of the parties to the deed. *Konneker v. Romano,* 2010 WI 65, 26, 326 Wis. 2d 268, 785 N.W.2d 432. The proper construction of an easement is a question of law that we review de novo. *Hunter v. Keys,* 229 Wis. 2d 710, 715, 600 N.W.2d 269 (Ct. App. 1999).

## III. DISCUSSION

¶ 13. The question before us is whether the sand removal rights conveyed in the easement between the County and Nemitz were personal to Nemitz, or whether they were fully transferable.

¶ 14. An easement is an interest in land possessed by another. *Gojmerac v. Mahn,* 2002 WI App 22, ¶ 18, 250 Wis. 2d 1, 640 N.W.2d 178. "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." Restatement (Third) of Prop.: Servitudes § 1.2 (1) (2000). Easements may be either appurtenant easements or easements in gross. *Gojmerac,* 250 Wis. 2d 1, ¶ 18. An easement appurtenant ties the rights or obligations of a servitude to ownership or occupancy of the land, and thus it is transferred with the land. *Id.* An easement in gross does not tie the benefits or burdens of

a servitude to the land, and may be personal or transferable. *Id.*, ¶ 18 & n.5.

■

¶ 15. At common law, the sand removal rights at issue here would be classified as a *profit à prendre.* Like an easement, a *profit à prendre,* now generally known simply as a "profit" (*see* Restatement (Third) of Prop.: Servitudes § 1.2 cmt. f), is also an interest in land that involves the additional power to acquire or remove things from the land. *Van Camp v. Menominee Enters., Inc.,* 68 Wis. 2d 332, 343, 228 N.W.2d 664 (1975). Rights often associated with a profit include hunting and fishing rights, mineral and timber rights, and, as in the case at bar, sand removal rights. *Id.; Figliuzzi v. Carcajou Shooting Club,* 184 Wis. 2d 572, 581, 516 N.W.2d 410 (1994); *Gray v. Handy,* 208 N.E.2d 829, 831–32 (Mass. 1965). Both an easement and a profit were distinguished in the common law from a mere license, which did not qualify as an interest in real property and was revocable by its very nature. *Van Camp,* 68 Wis. 2d at 344. In 1994, this court held that there is no meaningful legal distinction between an easement and a profit. *Figliuzzi,* 184 Wis. 2d at 583. The Restatement in fact defines a profit as an easement with additional rights. Restatement (Third) of Prop.: Servitudes § 1.2(2) & cmt. e (2000).

¶ 16. It is clear that the water flowage rights and the sand removal rights in the deed between Nemitz and the County each constitutes an interest in the land. Both parties concede that the interpretive instructions in Wis. Stat. § 706.10(3) play a role in the proper interpretation of conveyances of land and interests in land. The dissent, however, challenges whether the statute applies to interests in land at all. *See* dissent, ¶¶ 57–63.

¶ 17. Wisconsin Stat. § 706.10(3) has existed in some form since 1874. The first iteration of the statute

abrogated the common law rule by providing: "In all conveyances of land hereafter made in this state, words of inheritance shall not be necessary in order to create or convey a fee . . . ." § 1, ch. 316, Laws of 1874.

¶ 18. The legislature amended the statute in 1878 to provide:

> In conveyances of lands, words of inheritance shall not be necessary to create or convey a fee, and every grant of lands or any interest therein shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms or be necessarily implied in the terms of such grant.

Wis. Stat. § 2206 (1878). The annotated version of the next published edition of the statutes (in 1889) states that this new statute was composed of the 1874 version, "with addition of words from the New York statute to give it full effect."

¶ 19. The New York statute upon which ours was based stated:

> The term "heirs" or other words of inheritance, shall not be requisite to create or convey an estate in fee; and every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant.

1 N.Y. Rev. Stat. pt. 2, ch. 1, tit. 5, § 1 (1835) (quoted in *Whitney v. Richardson,* 13 N.Y.S. 861, 862 (N.Y. Gen. Term 1891)). Faced with the question of whether that statute applied to easements, the Supreme Court of New York concluded that it did, holding that an easement was an "estate in fee" under the statute. *Whitney,* 13 N.Y.S. at 862 (interpreting *Nellis v. Munson,* 15 N.E.

623

739, 741 (N.Y. 1888)); *see also* N.Y. Jur. 2d Easements, § 30 (1997) ("The statute providing that the term 'heirs' or other words of inheritance are not necessary to convey an estate in fee simple also applies to the creation of an easement . . . .").[9]

¶ 20. In 1969, the Wisconsin legislature revised and renumbered our statute. It now reads:

> In conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance.

Wis. Stat. § 706.10(3). We were unable to find any evidence, textual or extra-textual, that these revisions reflected a legislative intent to change the meaning of the statute. Rather, the changes appear merely stylistic. For example, the legislature changed the phrase, "every grant of lands or any interest therein," to simply "conveyance." A "conveyance" is defined as a written instrument evidencing a transaction governed by Chapter 706, which would include both a grant of land and the conveyance of an interest in land. *See* § 706.01(3).

¶ 21. Unlike the dissent, we find the statute to be sufficiently clear that it applies to easements. *See* Dissent, ¶¶ 57–63. We see clues in the second clause of the statute, which states, "every conveyance shall pass all

---

[9] Other states with nearly identical language have similarly interpreted their statutes to include easements as well as conveyances of land. *See, e.g., Presbyterian Church of Osceola, Clarke County v. Harken,* 158 N.W. 692 (Iowa 1916); *Karmuller v. Krotz,* 18 Iowa 352 (1865); *Brown v. Redfern,* 541 S.W.2d 725 (Mo. Ct. App. 1976).

the estate or interest of the grantor." The conjunctive "or" means that some conveyances contemplated by the statute will include an estate, while some may include only interests in the land. The pre-1969 version of the statute further makes clear that the current statute's use of "conveyance" is meant to be shorthand for "every grant of lands or any interest therein." And if there were any doubt, courts in other states with similar statutes, including the New York statute upon which ours was based, have construed this language to apply to easements as well as conveyances of land. *See supra* ¶ 19 & note 9.

¶ 22. Thus, though a cursory reading of § 706.10(3) might suggest that its provisions do not govern easements, the textual clues, statutory history, and the interpretation of its sister statutes make clear that the interpretive instructions in this subsection apply to conveyances of interests in land like the deed here.[10]

¶ 23. Wisconsin Stat. § 706.10(3), then, provides that every transfer of an interest in land conveys full title to that interest, including the right to transfer the

---

[10] The County argues that the statute is merely a drafting guide and not a substantive tool for interpretation. It further argues that the statute is an extrinsic aid only to be considered after a deed is first deemed ambiguous.

The statute rebuts this, however. It tells us how deeds "shall" be construed, and thus provides an interpretive aid for *all* deeds, not just ambiguous ones. Wis. Stat. § 706.10(3). Moreover, § 706.01(1) states that Chapter 706 "shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity." The transfer of interests from the County to Nemitz is no exception.

interest, unless the conveyance evinces a different intent "expressly or by necessary implication."

¶ 24. The County argues that the language of the 1977 deed does make clear that the sand removal rights were non-transferable. It maintains that the omission of "heirs and assigns" in the sand removal grant—in contrast to the inclusion of that language in the water flowage grant—constitutes express language or at least necessarily implies that the original parties intended the water flowage rights to be transferable and the sand removal rights to be personal to Nemitz. The County further argues that under *Brody v. Long,* a deed transfering rights away from a government entity must be construed in favor of the government entity. 13 Wis. 2d 288, 297, 108 N.W.2d 662 (1961).

¶ 25. BCM argues that because property interests are fully transferable even in the absence of words of inheritance like "heirs and assigns," the absence of "heirs and assigns" in the 1977 deed's grant of the sand removal rights was immaterial, and thus those rights are fully transferable.

¶ 26. The County's assertions notwithstanding, the deed simply does not provide any express language stating that the sand removal rights were not fully transferable. An express limitation on transferability would be manifest in language affirmatively limiting the sand removal rights to Carl Nemitz. If, as the County argues, the difference in granting language indicates an intent to make one grant transferable and the other non-transferable, such a conclusion is implied, not express.

¶ 27. Thus, the question is whether the non-transferability of the sand removal rights is a "necessary implication" of the terms of the easement. In addition to this statute, the Wisconsin Statutes use the

626

phrase "necessary implication" three other times. Wis. Stat. § 62.09(8)(c) (relating to mayoral veto power); Wis. Stat. § 702.03(2) (relating to powers of appointment); Wis. Stat. § 704.09(3) (relating to the transfer of an interest owned by a tenant or landlord).[11] Each usage occurs in the phrase "expressly or by necessary implication." The legislature's intent for a "necessary implication," then, is closely tied to the concept of an "express" statement. It is fair to say that a necessary implication is one that is so clear as to be express; it is a required implication. Said another way, where the terms of a conveyance contain a necessary implication, an interpretation otherwise would constitute a perverse misconstruction of the language.

¶ 28. The County maintains that the difference in language between the grant of water flowage rights and the grant of sand removal rights creates a necessary implication that the sand removal rights are non-transferable. The water flowage rights were granted to "CARL NEMITZ, his heirs, and assigns," while the sand removal rights were granted to "the Grantee," who is defined in the deed as "CARL NEMITZ." The County argues that the omission of the "heirs and assigns" language from the sand removal grant evinces a necessary implication that the rights were non-transferable. To read it otherwise, the County asserts, would render the "heirs and assigns" language mere surplusage. *See Goebel v. First Fed. Savings & Loan Ass'n of Racine,* 83 Wis. 2d 668, 680, 266 N.W.2d 352 (1978) ("[C]ourts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage.").

---

[11] Before the court of appeals decision in this case, it does not appear that any published decision interprets the phrase "necessary implication" as used in § 706.10(3).

¶ 29. The County's interpretation of the 1977 deed is certainly a reasonable one. Indeed, we generally interpret the use of differing language in similar or related sections as intending a different meaning. *Cf. Responsible Use of Rural & Agric. Land (RURAL) v. Public Service Commission,* 2000 WI 129, ¶ 39, 239 Wis. 2d 660, 619 N.W.2d 888 (holding that when words are used in one subsection of a statute but not another subsection, a different meaning is intended). But this interpretation of the easement is not a required or necessary one.

¶ 30. We find BCM's interpretation to be at least as reasonable as the County's reading. As BCM explains, according to the statute's interpretive instructions, the words "heirs and assigns" (or any similar language) are unnecessary to indicate a transferable interest. Wis. Stat. § 706.10(3) ("[W]ords of inheritance shall not be necessary to create or convey a fee . . . ."). As a matter of law, "Grantee" therefore has the exact same meaning as "Grantee and his heirs and assigns" unless another meaning is expressly stated or implied. Both indicate the grant of a fully transferable interest. Therefore, we need not construe that phrase as having any legal effect. *See Weber v. Nedin,* 210 Wis. 39, 46, 246 N.W. 307 (1933) (determining that language in a deed conveying property to one's "assigns" was "without legal effect" and therefore superfluous). Under the directive of § 706.10(3), then, the grant of water flowage rights to "CARL NEMITZ, his heirs, and assigns" and the grant of sand removal rights to "the Grantee" (who is identified in the deed as Nemitz) are identical, and each conveys a freely transferable interest.

¶ 31. The reasonableness of BMC's reading is supported by the easement's reference to itself as a single easement. The 1977 deed is entitled "Easement for

Flowage Rights." The document also speaks of "this easement" when giving the date and naming the parties ("THIS EASEMENT, made this 12th day of May, 1978, between JACKSON COUNTY . . . and CARL NEMITZ"), and when explaining that this is a corrected deed (*see supra* note 5) ("This easement is given for the purpose of correcting an erroneous description . . . ."). An additional internal reference states that "THIS EASEMENT, *shall be perpetual* providing that the flowage rights hereby granted are being used for the purpose of cranberry culture" (emphasis added). The County argues that the reference to "this easement" refers only to the water flowage rights because this statement immediately follows the grant of water flowage. While this may be a reasonable reading, another reasonable reading is that "this easement" refers, as it does in its other iterations, to the document as a whole, and therefore characterizes the sand removal rights as perpetual as well.

¶ 32. We find additional support for BCM's reading in the fact that the easement contains two express limitations. First, the County "expressly reserved the right of the public for access to the [County] land for the purposes of hunting and fishing." Second, the sand removal and water flowage rights were conditioned on their being "used for the purpose of cranberry culture." It is reasonable to conclude that had the deed been intended to limit the transferability of either the flowage or sand removal rights, it would have said so expressly. *See FAS, LLC v. Bass Lake,* 2007 WI 73, ¶ 27, 301 Wis. 2d 321, 733 N.W.2d 287 (" '[T]he express mention of one matter excludes other similar matters that are not mentioned.' ") (quoting *Perra v. Menomonee Mut. Ins. Co.,* 2000 WI App 215, ¶ 12, 239 Wis. 2d 26, 619 N.W.2d 123).

¶ 33. Thus, both BCM and the County offer reasonable interpretations of the easement. We simply do not agree with the County that its reading—that the sand removal rights were intended to be personal to Nemitz and non-transferable—is expressly stated in or a necessary implication of the terms of the easement. Accordingly, under Wis. Stat. § 706.10(3), the easement conveyed a fully transferable interest in both the water flowage and sand removal rights.

¶ 34. The County's final argument[12] rests on a single sentence in *Brody v. Long* stating that "a grant of land by a public body is to be construed most strongly against the grantee." 13 Wis. 2d at 297 (citing 6 Thompson, Real Property (perm. ed.) 571, § 3365). The County argues that this brief statement in *Brody* creates a top-level rule of broad application.

¶ 35. We disagree. The *Brody* court discussed this rule only *after* having applied ordinary rules of construction. *See id.* at 293–96. Furthermore, the *Brody* court did not even rely on the rule in its decision, but added it only as an additional independent basis for its decision. *See id.* at 298. We also note that no published opinion in this state has cited to or relied on this statement in *Brody* since it was made almost 50 years ago.

---

[12] The County also makes a brief and undeveloped argument that "[u]nder the County Forest program, sand and gravel extraction by private entities such as B[CM] is forbidden." That sentence, found in the County's Statement of Facts in its main brief, is the extent of its argument on the issue, and we need not consider it. *Clean Wis., Inc. v. Public Service Commission*, 2005 WI 93, ¶ 180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

¶ 36. To the extent *Brody* is an accurate statement of the law (an issue we need not address here), it would be applied only as a rule of last resort after employing the normal methods of interpretation, particularly those specified by the legislature in Wis. Stat. § 706.10(3). We fail to see how the rule of construction in *Brody* can trump the legislative mandate in Wis. Stat. § 706.10(3).

## IV. CONCLUSION

¶ 37. In summary, we hold that the 1977 easement granted Nemitz a transferable right to remove sand from County land. Wisconsin Stat. § 706.10(3) provides that every conveyance of an interest in land conveys full title to that interest unless the language of the conveyance indicates otherwise by express language or necessary implication. We conclude that the easement does not contain an express statement or necessary implication that only a limited, non-transferable right to remove sand was conveyed. We therefore affirm the decision of the court of appeals and remand for the circuit court to enter an order granting BCM's motion for summary judgment.

*By the Court.*—The decision of the court of appeals is affirmed and the cause remanded with directions.

¶ 38. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority chooses not to resolve this case by a determination of the intent of the parties from the text of the document. This approach is puzzling, to say the least.[1]

---

[1] *See, e.g., Konneker v. Romano,* 2010 WI 65, ¶ 26, 326 Wis. 2d 268, 785 N.W.2d 432 ("Because the easement in question is created by deed, the court must look to that instrument in

¶ 39. Instead, the majority resolves this case using Wis. Stat. § 706.10(3). In doing so, the majority construes the 1977 document to an end that effectively disregards the otherwise apparent intent of the parties as evinced by the written text.

¶ 40. Because I conclude that the easement, here a deed and referred to hereafter as the document, created a nontransferable right to sand removal, personal to Nemitz as the original holder, and because I reach this conclusion regardless of whether I apply traditional rules for interpreting an easement instrument or apply a correct interpretation of Wis. Stat. § 706.10(3), I dissent.

I

¶ 41. I begin by interpreting the document and acknowledging the rules of interpretation. When the text of a document is plain and unambiguous, the document must be interpreted to effectuate the parties' intent.[2] Case law also establishes that the primary source of the intent of the parties is "what is written

construing the relative rights of the landowners. Deeds are construed as are other instruments; accordingly, the purpose of the court is to ascertain the intention of the parties. The primary source of the parties' intent is what is written within the four corners of the deed." (internal quotations and citations omitted)).

[2] *Atkinson v. Mentzel,* 211 Wis. 2d 628, 638, 566 N.W.2d 158 (Ct. App. 1997) ("Construction of the deed to determine the grant's terms and purposes is a question of law unless there is an ambiguity requiring resort to extrinsic evidence. Whether an ambiguity exists is a question of law . . . ."); *Hemmis v. Consol. Water Power & Paper Co.,* 173 Wis. 518, 521, 181 N.W. 743 (1921) (" . . . in construing deeds every word and clause is to be taken into consideration").

within the four corners of the deed . . . ."[3] Furthermore, as the majority notes, "we generally interpret the use of different language in similar or related sections as intending a different meaning."[4]

¶ 42. I therefore begin with the text of the document. Applying the rules of interpretation identified above, I conclude that the 1977 document granted rights relating to the water flowage different from those relating to sand removal. Whereas the former (water flowage) is transferable by each grantee, the latter (sand removal) is personal to the original grantee and thus is not transferable by the original grantee.

¶ 43. Regarding the water flowage rights, I conclude that the following aspects of the text support the conclusion that the 1977 document conveyed an easement for flowage rights and that the easement for flowage rights was transferable: (1) the title is "Easement for Flowage Rights," phrased in the singular (an "easement") and specifically referring to flowage rights; (2) the phrase "easement . . . with full right and privilege" is used; (3) the grant of flowage rights is to "Carl Nemitz, his heirs, and assigns," the latter words ordinarily used to indicate transferability; (4) the easement is "perpetual providing that the flowage rights hereby granted are being used for the purpose of cranberry culture." The only reasonable interpretation of this text is that the water flowage provision is a grant of a transferable right. Majority op., ¶¶ 29–30.

¶ 44. In contrast, the grant of sand removal rights presents a different text, on its face supporting a

---

[3] *Rikkers v. Ryan,* 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). The interpretation of the document is ordinarily a question of law without resort to extrinsic evidence.

[4] Majority op., ¶ 29.

different conclusion. The sand removal provision must be interpreted according to its text and in comparison with the language used to create the transferable water flowage easement. Thus the language that is used in the grant of sand removal, as well as language that is used in the grant of water flowage but conspicuously omitted from the grant of sand removal, are both significant. Analyzed in this way, the text of the sand removal provision contains numerous indicia that the parties intended the two rights to be different and discrete from one another.

¶ 45. The document is structured in a way that makes the sand removal rights both structurally and linguistically separate from the water flowage rights.

¶ 46. With regard to structure, the provisions relating to the water flowage rights are listed first and constitute the bulk of the document. The document further enumerates that the conveyance is supported by consideration, witnessed by the parties, and perpetual. In contrast, the sand removal rights are addressed last, constituting a separate almost ancillary paragraph, of one single sentence.

¶ 47. With regard to language, the text of the sand removal provision, both in the words used as well as those omitted, distinguishes the grant of sand removal rights from the immediately preceding grant of water flowage rights. The sand removal provision does not use the word "easement;" instead, it uses only the words "right and privilege." The words "heirs and assigns," used in the grant of water flowage, are omitted from the sand removal provision; sand removal is granted only to "the Grantee [Carl Nemitz]." While the statement that the sand removal right is limited to the use for the purpose of cranberry cultivation, the word "perpetual" is not used. Finally, the document's title is an "Ease-

ment for Flowage Rights." The title makes no mention of sand removal and the grant related to sand removal, which is instead set forth as a "further right and privilege."[5]

¶ 48. Thus, the explicit and repeated terms of the document's sand removal provision distinguish it from the transferable water flowage rights. The sand removal provision is a separate ("further") grant, and it is a grant made personally to Nemitz.

¶ 49. I agree with the County that the cumulative effect of these structural and linguistic distinctions is to communicate the parties' intent that the grant of the right of sand removal be personal to Nemitz and not transferable.[6] If this intent is not flatly unambiguous, it is certainly the most reasonable interpretation of the intent of the parties, based on the primary source for determining that intent—what is written within the "four corners" of the document itself.

---

[5] Contrary to the majority's assertion, reading the document as creating an easement only in water flowage rights does not disrupt the document's syntax. The sand removal rights may be reasonably read as a license rather than as an easement. It is well-established that licenses and easements may involve the same type or quantity of use. Furthermore, licenses may also be conveyed in written documents between the original parties and using language such as "grant." When coupled with a writing conveying an interest in land, such as the easement for flowage rights here, a written license may become an irrevocable license. This reasonably accounts for the parties' inclusion of the license in the 1977 document that also grants the easement in flowage rights. Thus, only a single easement is created—one easement, one license—which explains the title's reference to a singular "Easement for Flowage Rights."

[6] *Schwartz v. Evangelical Deaconess Soc'y of Wis.*, 46 Wis. 2d 432, 438, 175 N.W.2d 225 (1970).

¶ 50. Surprisingly then, the majority ultimately concludes that this reasonable interpretation of the document cannot be controlling because an equally reasonable interpretation is gleaned from the majority's (erroneous) application of Wis. Stat. § 706.10(3).

## II

¶ 51. I turn to Wis. Stat. § 706.10(3), which the majority concludes is determinative, although the statute plays a relatively minor role in the parties' briefs.

¶ 52. I began by interpreting the text of the document, and I shall now proceed to the text of the statute. The majority places the statutory history before statutory text. The majority begins its discussion not with the text of Wis. Stat. § 706.10(3) but with a recitation of statutory history and authority from other jurisdictions. *See* majority op., ¶¶ 15–20. I follow the more usual method, beginning with the statutory text and then addressing the statutory history and other sources of legislative intent.

## A

¶ 53. Wisconsin Stat. § 706.10(3) has two clauses, each complete by itself and each capable of standing as a separate sentence. The text of Wis. Stat. § 706.10(3), when properly parsed, reads as follows:

[1] In *conveyances of lands* words of inheritance shall not be necessary to create or convey a fee, and

[2] *every conveyance* shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance (formatting and emphasis added.)

¶ 54. I conclude that Wis. Stat. § 706.10(3) does not help us in interpreting the intent of the parties expressed in the document. However, were I to apply the statute to the present facts, I would nonetheless conclude that the County prevails.

¶ 55. As written, the first clause of Wis. Stat. § 706.10(3) provides that in conveyances of lands, words of inheritance (that is, words like "heirs" and "assigns") are not necessary to create or convey a fee.

¶ 56. The second clause of Wis. Stat. § 706.10(3) provides that every conveyance shall pass all of the estate or interest of the grantor unless a different implication appears expressly or by necessary implication in the terms of such conveyance.

¶ 57. The first clause governs "conveyances of lands." It does not apply to the document at issue in the present case because in Wisconsin an easement is not a conveyance of land, and the present case does not involve creation or conveyance of a fee.

¶ 58. At least in Wisconsin, an easement is only an interest in land, not the land itself. Accordingly, a conveyance of a right-of-way, for example, is not a conveyance of the strip of land itself.[7] This court has repeatedly affirmed that an easement "does not create an estate in land," but rather "a right to use the land of another for a special purpose not inconsistent with the general property in the owner."[8] Thus it is abundantly

---

[7] *Hunter v. McDonald,* 78 Wis. 2d 338, 344, 254 N.W.2d 282 (1977).

"An easement is a permanent interest in another's land, with a right to enjoy it fully and without obstruction." *Id.* at 343 (quoted source omitted).

[8] *Hunter v. McDonald,* 78 Wis. 2d 338, 344, 254 N.W.2d 282 (1977).

clear that the granting of an easement does not convey title to the land to an easement holder but only a right or privilege.[9]

¶ 59. Therefore, as an easement, the 1997 document (titled "Easement for Flowage Rights") is not a conveyance of land. By the statute's own terms, this document is therefore not affected by the first clause of Wis. Stat. § 706.10(3).

¶ 60. Based on the text of the statute, I therefore conclude that the first clause of Wis. Stat. § 706.10(3) applies only to a subset of conveyances, "conveyances of lands" that "create or convey a fee." The conveyance of the easement for water flowage and the conveyance of sand removal rights in the instant case are not conveyances of land creating a fee within the scope of the first clause of Wis. Stat. § 706.10(3).

¶ 61. Furthermore, the phrase "unless a different intent shall appear expressly or by necessary implication," contained within the second clause of § 706.10(3), does not modify or affect the first clause of the sentence, which applies to conveyances of lands and creation of fee interests.

¶ 62. A final important point. The fact that the words of inheritance are not *necessary* in a conveyance of land creating a fee to convey a transferable estate or interest does not mean that words of inheritance are meaningless if they are used. A drafter may use words like "heirs" and "assigns" to manifest the intent of the parties, even if their use is not required to convey a transferable interest in land. Indeed the statutory form warranty deeds set forth in the 1874 Laws,[10] in the

---

[9] *Polebitski v. John Week Lumber Co.,* 157 Wis. 377, 381, 147 N.W. 703 (1914).

[10] Laws of 1874, ch. 316, § 1.

1878 Statutes[11] and in the 1967 statutes[12] provide for conveyance to the "grantee, his heirs and assigns," even when the statutes provide that words of inheritance are not necessary.

¶ 63. I turn now to the second clause of Wis. Stat. § 706.10(3). It covers "conveyances." The use of the word "conveyances" can be interpreted as referencing, and thus as controlled by, the first clause to address only a conveyance of land that creates or conveys a fee. If so, the second clause of the statute is not applicable here for the same reasons that the first clause of the statute is not applicable.

¶ 64. The majority interprets the word "conveyance" in the second clause of the statute more broadly to include a conveyance of any interest of land, thus including the conveyance in the instant case. This interpretation is supported by Wis. Stat. § 706.01(4), which states that for purposes of chapter 706, the word "conveyance" means "a written instrument evidencing a transaction governed by this chapter, that satisfies the requirements of s. 706.02, subject to s. 706.25."

¶ 65. Applying this interpretation of "conveyance," a conveyance of an interest in land, that is, a conveyance of an easement or right or privilege, shall, under the second clause, pass all the *estate* or *interest* of the grantor to the grantee unless a different intent shall appear expressly or by necessary implication.

¶ 66. The words "estate" and "interest" are not defined in this second clause. The court has already declared that an easement does not create an estate;[13] a

---

[11] Wis. Stat. 1878, § 2208.

[12] 1967 Wis. Stat. § 235.06.

[13] *See supra* notes 8–10 and accompanying text.

right or privilege is not an estate. The grantor of an easement is not passing an estate.

¶ 67. The grantor of an easement may convey his or her "interest" in the easement, however. Thus if an easement holder conveys the easement, the entire interest the grantor holds in the easement is transferred, unless there is a different expressed intent or necessary implication. If, however, the holder of the easement owns less than a full interest—let us say she owns a one-half interest in the dominant estate and thus a one-half interest in the easement—she then conveys all of her one-half interest unless a different intent shall appear expressly or by necessary implication.

¶ 68. The majority bypasses the precise language and structure of Wis. Stat. § 706.10(3) and breezily paraphrases the two clauses, claiming that the statute "provides that every transfer of an interest in land conveys full title to that interest . . . unless the conveyance evinces a different intent 'expressly or by necessary implication.' " Majority op., ¶ 23. This improper expansion of the statutory language results in an erroneous application of the statute to the present case.

¶ 69. The majority substitutes "full title" for the words "estate" and "interest." The majority does not explain why the words "estate" and "interest" can be transformed into the words "full title" and does not explain the significance of the words "full title."

¶ 70. Stated another way, the majority mixes and matches words from the two clauses of Wis. Stat. § 706.10(3) to conclude (1) that words of inheritance shall not be necessary in any conveyance of lands, of an estate, or of an interest in land; (2) that every conveyance of an interest in land automatically implies words of inheritance (that is, that every conveyance of an interest in land includes the right of the grantee to

transfer the same interest in the future); and (3) that a different intent, such as the intent that the conveyed interest in land be nontransferable, must appear expressly or by necessary implication in the terms of the conveyance.

¶ 71. This interpretation contravenes the plain text of the statute. Grammatically, the text is severable so that each clause may stand alone. Neither clause of the statute refers to the other, and each clause covers different circumstances. Yet the majority uses words from each clause to modify the other. The majority's construction seems to use the words of the first clause addressing words of inheritance to modify the second clause. At the same time the majority takes the words "unless a different intent shall appear," which appear only in the second clause, and construes them to modify the first clause.

¶ 72. In addition to these textual problems, the majority fails to give effect to the legislature's explicit instruction on how to interpret chapter 706. If a statute within chapter 706 of the statutes ("Conveyances of Real Property; Recording; Titles") is viewed as ambiguous or there is a conflict, the legislature has provided a rule of interpretation: interpret chapter 706 liberally so as to effectuate the intentions of the parties who have acted in good faith. Wisconsin Stat. § 706.001(1) and (3) provide in relevant part as follows:

> (1) [T]his chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity. . . .
>
> . . . .

641

(3) This chapter shall be liberally construed, in cases of conflict or ambiguity, so as to effectuate the intentions of parties who have acted in good faith.

¶ 73. In my view, the majority's application of Wis. Stat. § 706.10(3) violates this specific rule of construction by defeating the intent of the parties as manifest in the terms of the document itself.

B

¶ 74. Contrary to the majority's brief treatment, my review of the statutory history confirms that the two clauses of Wis. Stat. § 706.10(3) should be read independently, each given an effect of its own. As the majority explains at ¶ 17, Wisconsin enacted its first form of today's § 706.10(3) in 1874. Section 1, Chapter 316 of the Laws of Wisconsin 1874 read as follows:

> In all conveyances of land hereafter made in this state, words of inheritance shall not be necessary in order to create or convey a fee.

This is the near-verbatim equivalent of the first clause of the present § 706.10(3).

¶ 75. In 1878, the legislature then amended the statute. It added additional language that would become the forerunner of the second clause of the present version of § 706.10(3).[14] The legislative history thus

---

[14] Wisconsin Statutes Annotated of 1878 provides:

Section 2206. In conveyances of lands, words of inheritance shall not be necessary to create or convey a fee and every grant of lands or any interest therein shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms or be necessarily implied in the terms of such grant.

confirms that § 706.10(3) is composed of two distinct clauses with distinct origins and independent operation.

¶ 76. The majority's statutory history and its use of authority from other states do not contravene that the statute has two distinct clauses or provide a persuasive reason why words from each should be read into the other.

¶ 77. The majority notes that the 1878 amendment added the second clause from a New York statute. The majority cites the New York statute, 1 Rev. St. 748 § 1 (quoted in *Whitney v. Richardson,* 13 N.Y.S. 861, 862 (N.Y. 1891). The *Whitney* case does not interpret the statute.

¶ 78. The majority argues that New York case law from the same period applied the New York statute to easements. I agree that the second clause can be applied to easements.

¶ 79. *Nellis v. Munson,* 108 N.Y. 453, 457 (1888), on which the majority relies, does not, however, interpret the New York statute, 1 Rev. St. 748 § 1, the provision relied on by the Wisconsin legislature. Rather, *Nellis* interprets a different provision, New York 3 Rev. St. 137, dealing with execution and delivery of documents relating to easements.[15]

---

[15] The majority's reference to case law from other jurisdictions is inapposite. The statutes are not the same as Wis. Stat. § 706.10(3). The cases revolve around the words "heirs" or "assigns." The cases stand for the proposition that these words need not be used and that the intent of the parties controls. *See, e.g., Karmuller v. Krotz,* 18 Iowa 352 (1865) (holding that the use of the term "heirs" is not essential to make the right of way transferable; examine intent of parties); *Brown v. Redfern,* 541 S.W.2d 725 (Mo. 1976) (words "heirs" or "assigns" not required; examine intent of the parties as controlling to determine that

¶ 80. Nothing in the majority opinion suggests, much less conclusively establishes, that the New York statute (which Wisconsin adopted as the second clause) should not be read as providing two separate standards affecting separate subject matters within conveyances at large. The cumulative effect is that the majority's reliance on the New York statute, 1 Rev. St. 748 § 1, provides no basis for importing the substance and effect of the first clause of § 706.10(3) into the context of the second clause or importing the substance and effect of the second clause into the context of the first clause.

## C

¶ 81. Were I to apply a proper interpretation of Wis. Stat. § 706.10(3), assuming the statute should be applied at all, the County prevails.

¶ 82. The County was transferring not land but an interest in land, so the first clause of Wis. Stat. § 706.10(3) does not apply. This is the only clause of the statute that addresses words of inheritance. In any event, as I stated previously, the fact that the words of inheritance are not *necessary* to convey a transferable estate or interest does not mean that words of inheritance are meaningless when they are used, especially when they are used selectively. A drafter may use such words to manifest the intent of the parties, even if their use is not required to convey a transferable interest in

an express easement was created where the deed required that the easement be appurtenant); *Presbyterian Church of Osceola, Clarke County v. Harken,* 158 N.W. 692 (Iowa 1916) (citing *Karmuller v. Krotz* to show that intent of the parties determines transferability of an interest in land; holding that the reservation at issue was an easement appurtenant where intended to benefit the remaining land, not the grantor personally).

land. In my view, the drafter of the document at issue deliberately used different words to express different intents.

¶ 83. The second clause of Wis. Stat. § 706.10(3) applies. The second clause is silent about the effect of words of inheritance on conveyances of an estate or an interest less than a conveyance of the land itself. The second clause simply indicates that whatever estate or interest is held by the grantor, "all the estate or interest" shall be passed by the conveyance. From the words of the document, I conclude that the right to sand removal was nontransferable and passed only to the grantee.

¶ 84. The "right and privilege to remove sand" was subject to two limitations that are apparent from the language of the document. First, it is conditioned on its use "for the purpose of cranberry culture upon the Grantee's adjacent lands." Second, the transfer is made to the "Grantee," without words of inheritance. In juxtaposition with the Easement for Water Flowage, the necessary implication is that the sand removal right is only to the "Grantee" and not to the Grantee's "heirs and assigns." The fact that words of inheritance are not necessary to convey a fee interest in a conveyance of land (covered by the first clause of Wis. Stat. § 706.10(3)), does not make them irrelevant when the parties specifically and selectively choose to use or omit such words in a conveyance of an interest in land.

¶ 85. In summary, I conclude that the conveyance of the sand removal to Nemitz was a conveyance of a personal, non-transferable right or privilege. I do not see the bearing of the statute upon which the majority relies, and I would resolve the matter following the usual rule of seeking the intent of the parties by interpreting the language contained in the instrument

itself. Even if I were to apply Wis. Stat. § 706.10(3), I cannot agree with the majority's interpretation and application of that statute. Following what I believe to be the proper interpretation of the statute, I would conclude that the County prevails under Wis. Stat. § 706.10(3).

¶ 86. For the reasons set forth, I dissent.

¶ 87. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.